139 So.2d 719 (1962)
Jesse CAYSON and Doyle Cayson, Appellants,
v.
STATE of Florida, Appellee.
No. B-60.
District Court of Appeal of Florida. First District.
April 12, 1962.
*720 John S. Berry, Tampa, and R. Worth Moore, Tallahassee, for petitioners.
Richard W. Ervin, Atty. Gen., and Reeves Bowen, Asst. Atty. Gen., for appellee.
PER CURIAM.
We consider an application of appellants, Jesse Cayson and Doyle Cayson, filed March 12, 1962, for an order permitting them to file in the Circuit Court of Okaloosa County a petition for writ of error coram nobis.
The Caysons were indicted in the Circuit Court of Okaloosa County on a charge of murdering one Les Wilson, and in November, 1958, were convicted and sentenced to a term of life imprisonment in the state penitentiary. The judgment of conviction was affirmed by this court in February, 1960.[1]
The application under consideration is supported by three affidavits and two reports of an extra-judicial polygraph examination of appellants. We accord no legal effect to the latter. By the application, reports and supporting affidavits it is alleged that on August 25, 1961  eighteen months after the affirmance by this court of the judgment of conviction  Mr. Thomas D. Beasley, the attorney who represented *721 the applicants at the trial and on the appeal, had a conversation with a newspaper reporter and the sister and brother-in-law of the applicants at the home of the latter at DeFuniak Springs, Florida, in the course of which Mr. Beasley made statements substantially as follows: That he, Beasley, was in possession of "new" and "direct" evidence concerning the shotgun slaying of Les Wilson; that he had knowledge of the same "long before the trial" of the Cayson brothers; that he became informed thereof by a client he was retained to defend in a case prior and unrelated to the trial of the Caysons; that he was given information by said client which implicated the client himself in said murder; that he refused to divulge the name of said client because he was bound by his "oath as a lawyer" not to disclose privileged communications between himself and his client; that upon being asked whether said client gave him a story matching that given by state witnesses during the trial of the Caysons in 1958, Beasley responded, "Entirely different"; that Beasley stated, on the basis of the information allegedly given to him by said undisclosed client, that the Caysons were not criminally implicated in the murder of Les Wilson; that upon being asked whether he believed there was any bribery of vital state witnesses in said murder trial, Beasley replied affirmatively, without stating the name of any person; that Beasley stated he believed someone (not identifying the person) had exerted influence upon this court to procure per curiam affirmance of the conviction; that Beasley stated he had knowledge of the shotgun used to kill Les Wilson; and that upon being asked if his unnamed client was "Johnnie Steele", Beasley replied, "I have no comment."
It is inappropriate to review in this proceeding the substantial evidence upon which the judgment of conviction was based or to dignify by extensive comment the vague statement attributed to Mr. Beasley, impugning the integrity of this court. We note that the affidavit of the newspaper reporter, one Duane Bradford, was made at Tampa, Florida, before Agnes M. Burress, a notary public, rather than before some proof-taking official at DeFuniak Springs, Florida, where the alleged conversation with Beasley is said to have taken place, and that said affidavit bears distinctive earmarks of having been framed by or under the scrutiny of an attorney at law. If such is a fact, the attorney would have been well advised to consider his obligation, as a member of the bar and officer of the court, to protect and defend the court and its judges against unwarranted, irresponsible, and inexact aspersions of the character mentioned, which might have been done by simply refusing to be associated with the preparation of such a document, much less participating therein. Any lawyer with a modicum of experience recognizes that pratings of the character stated are all too common in the mouths of some attorneys, negligible in number, who have failed to deliver some promised result in the trial of law suits, civil as well as criminal.
In view of our disposition of the application for writ of error coram nobis which turns on factors other than the alleged statement of Mr. Beasley directed toward this court, that phase of the affidavit of the newspaper reporter is immaterial to the result. We hope, of course, that Mr. Beasley did not make the statement attributed to him and that the affiant incorrectly construed whatever statement, if any, Mr. Beasley did make; but we emphasize that it is inconsequential whether he did or did not make it. The individual judges of this court know they were not subjected to any pressure whatever in the performance of their duty; and in any event, it is obvious that the judges have no means of defense against such vague and irresponsible mouthings than to so conduct themselves generally that the bench, bar, and public as a whole will give no credence to such. In regard to the fact that we handed down a per curiam affirmance of the conviction, suffice it to say that after *722 the record of the testimony produced at the trial had been meticulously examined by each participating member of this court and full and complete consideration given to all issues of law before this court and to the argument of counsel, there remained no doubt whatever as to the sufficiency of the evidence to support the conviction and the lack of reversible error. Although the facts were somewhat theatrical and such as to create an avid public interest, the appeal was devoid of any novel question of law indicating that a definitive opinion would contribute to the jurisprudence of this state. It is elemental that under such circumstances it is appropriate for an appellate court to render a per curiam affirmance as was done in this case. We found nothing then or now to remotely indicate that appellants did not have the services of competent, energetic, and diligent counsel.
Under established procedure an appellate court does not issue writs of error coram nobis in cases appealed to and disposed of by it. It is authorized only to examine an application for permission to file a petition for the writ, and to determine therefrom whether sufficient facts are alleged which, if established by competent proof, would entitle the applicant to the writ. If the application is found to be sufficient, an order is entered by the appellate court granting the applicant permission to file a formal petition for a writ of error coram nobis in the court where the judgment under assault was rendered.[2]
In determining the sufficiency of such an application, the allegations of fact contained therein must meet certain established tests before permission will be granted. It must show an error of fact for which the statute provides no other remedy. It must show that the fact did not appear of record, or was unknown to the court when judgment was pronounced; and the fact must be such that if known would have prevented the judgment. It must show that the unknown fact could not have been known to the party by the exercise of reasonable diligence in time to have been otherwise presented to the court, or that he was prevented from so presenting it by duress, fear or other sufficient cause.[3] It is not enough to show that the fact, if known to the judge and jury, might have produced a different result, or that it is such as if presented and overruled, would compel a reversal of the judgment and a new trial because of the error committed.[4] The fact relied on must be such that, if established at the trial, it would have been sufficient to prevent rendition of the judgment questioned, since, even if the fact alleged as the ground for the writ is true, the writ will be denied where such matter could not have prevented entry of the judgment.
The application under consideration is premised upon the assertion that Mr. Beasley's failure to make a full disclosure to the Caysons of the knowledge acquired by him from a former client concerning the murder of Les Wilson constituted a fraud and deception upon them, prejudicing their right to a fair trial. Under the facts alleged in the application we hold that this assertion is without foundation. The information allegedly gained by Mr. Beasley from a former client regarding the latter's supposed implication in the murder of Les Wilson, if related to Mr. Beasley in connection with his representation of that client, was confidential and privileged. To have voluntarily divulged such information to the Caysons at the time they sought to employ him would have constituted a violation of Mr. Beasley's oath as an attorney, *723 as well as the Code of Ethics governing the conduct of attorneys in their relationship with clients.[5]
The appellants assert that because of Mr. Beasley's representation of a former client who confessed to him implication in the murder of Les Wilson, there arose a conflict of interest which restricted Mr. Beasley in his employment by the Caysons, and prevented him from fairly representing them. No facts are alleged in the application from which this conclusion could lawfully be drawn. There is nothing to show that Mr. Beasley was under any continuing obligation to represent his former client, or to protect him and those who might have acted in concert with him from subsequent prosecutions by the State for the murder of Les Wilson. Mr. Beasley's only obligation to him was to not divulge information given in confidence by that client. No facts are alleged from which it could be concluded that such former representation placed Mr. Beasley in an inconsistent position when he accepted employment by the Caysons. On the contrary it could be logically concluded that because of the knowledge gained by Mr. Beasley through his former representation, he would have been in a better position to prove the Caysons' innocence than would any other attorney not possessed of such knowledge. In the Snell case one of the grounds asserted for the issuance of a writ of error coram nobis was that the petitioner was not properly represented by his attorney during the trial. The Supreme Court held that this ground was not sufficient to authorize issuance of the writ.[6]
The applicants submit that had the trial court or defendants known either during or after the trial that Mr. Beasley had formerly represented a client who confessed implication in the murder of Les Wilson, a different judgment would have resulted, or the court would have ordered a mistrial. This conclusion likewise has no predicate in the facts alleged in the application. The knowledge possessed by Mr. Beasley would have had no bearing upon the prosecution of the Caysons unless it could have been introduced into the record at the trial. Had Mr. Beasley been called as a witness on behalf of the Caysons, he could not have been compelled to testify either as to the identity of his former client or to the information divulged to him in his representative capacity.[7] Had Mr. Beasley, with the consent of his former client, elected to waive the privilege of refusing to testify regarding this confidential communication, his testimony would have been objectionable on the ground that it constituted hearsay evidence. If it should be considered that neither of the above mentioned impediments would have lawfully precluded Mr. Beasley from testifying to the facts alleged in the application, it cannot be said that such testimony would have prevented the entry of a judgment of conviction against the Caysons. The uncorroborated testimony of a witness that some unnamed third party confessed on some indefinite date in the past that under undisclosed circumstances he committed the offense for which the defendants then on trial were charged is not entitled to credence. Such testimony would not be legally sufficient to prevent the entry of a judgment of guilt consequent upon a jury verdict based on evidence which establishes beyond a reasonable doubt that the defendants on trial were guilty of the offense charged.
As herein noted, appellants' application was filed in this court on March 12, 1962, which is approximately 6 1/2 months from the date of the alleged conversation with Mr. Beasley which took place on August 25, 1961. It is the general rule that an applicant seeking the extraordinary writ of error coram nobis must diligently *724 present the same. This means, of course, within a reasonable period of time after the facts upon which the application is based become known. While we have disposed of the application on other grounds, it will be noted that an inordinate period of time elapsed in this case prior to the filing of the application and that the application proper did not undertake to show good cause for the delay. It was not until April 2, 1962, the day before oral argument on the application, that there was filed in this court an affidavit by Mr. Raymond Cayson, a brother of the applicants, to the effect that the failure to file the application at a prior date was due to the fact that his brothers were indigent and without funds with which to secure legal help and because interested parties had been making an investigation to discover the "name of the person or persons being protected by Mr. Beasley" and "pursuing other leads in an effort to solve the killing of Les Wilson." The record herein reflects that on November 29, 1961, there was submitted to John S. Berry, Esq., Attorney at Law, 404 Franklin Street, Tampa, Florida, an attorney representing the applicants at this time, an ex parte and extra-judicial report of David F. Allison, who purports to be a "polygraph examiner", of a lie-detector test that is said to have been made by said Allison upon the applicants. This report recites that it was made at the request of said John S. Berry. Considering the situation in the light of that report and the fact that Mr. Raymond Cayson, who made the above affidavit, is not a party to this proceeding, there has not been a showing of good cause for the delay in filing the application.
The application for permission to file a petition for writ of error coram nobis being legally insufficient to justify the issuance of the writ, the application is accordingly denied.
CARROLL, DONALD, K., C.J., and STURGIS and WIGGINTON, JJ., concur.
NOTES
[1] Cayson v. State of Florida (Fla.App. 1960), 119 So.2d 329.
[2] Chambers v. State, 111 Fla. 707, 151 So. 499, 113 Fla. 786, 152 So. 437.
[3] Russ v. State (Fla. 1957), 95 So.2d 594; Chambers v. State, supra, note 2.
[4] Fiske v. State (Fla.App. 1958), 107 So.2d 745; Chesser v. State, 92 Fla. 754, 109 So. 906.
[5] Code of Ethics Governing Attorneys, Canon 37, 31 F.S.A.
[6] Snell v. State, 158 Fla. 431, 28 So.2d 863.
[7] Keir v. State, 152 Fla. 389, 11 So.2d 86.