223 So.2d 564 (1969)
Jessie Joseph TAFERO, Appellant,
v.
The STATE of Florida, Appellee.
No. 68-218.
District Court of Appeal of Florida. Third District.
February 25, 1969.
Rehearing Denied March 24, 1969.
Certiorari Denied May 19, 1969.
*566 Milton E. Grusmark, Miami Beach, and Natalie Baskin, Miami, for appellant.
Earl Faircloth, Atty. Gen., and Jesse J. McCrary, Jr., Asst. Atty. Gen., for appellee.
Before PEARSON, HENDRY and SWANN, JJ.
PEARSON, Judge.
Jessie Joseph Tafero has appealed from judgments of conviction of (1) assault with intent to commit rape; (2) committing a crime against nature; (3) feloniously entering without breaking into an apartment with intent to commit a felony, robbery; and (4) robbery. These judgments were based upon jury verdicts. The appellant received sentences totalling twenty-five years. He was a co-defendant with Philip Weinshenker, whose appeal is decided with an opinion filed this day, 223 So.2d 561.
Miss C.A.B. and Miss C.R. shared an apartment in Bay Harbor Islands, a municipality near the City of Miami Beach. Miss C.A.B. was awakened at about 6:00 A.M., March 4, 1967, by a man with a gun who referred to himself as Billy. Miss C.A.B. testified that Billy got into bed with her and forced her to commit an unnatural sex act upon him. Miss C.R. arrived home at about 6:30 A.M. Her roommate opened the door for her. When she entered she saw a naked man with a nylon stocking over his face. He forced Miss C.R. into the bedroom where he tied her hands and feet behind her while she lay on the floor.
At approximately 8:30 A.M., in response to a telephone call from Billy, a second man came to the apartment. He was called Jessie by his companion. Jessie forced Miss C.R. to have intercourse with him and used force upon her in an attempt to have her perform an unnatural sex act upon him. This attempt failed. But Jessie did force Miss C.A.B. to perform an unnatural sex act upon him. The men later ransacked the apartment. Miss C.R. was blindfolded and unblindfolded several times during the approximately eleven hours the men held her and Miss C.A.B. captive. Miss C.A.B. was not blindfolded. Billy's face was masked only part of the time. Jessie's face was not masked. At about 5:00 P.M. the suspicions of a neighbor were aroused, and when he attempted to enter the apartment forcibly, the two men escaped by jumping from the apartment's balcony. After the men left, the complainants discovered the following things were missing from their apartment: a mink stole, a black leather coat with fox trim, a Sheffield watch, costume jewelry, clothing, a hair dryer, and about $150 in cash.
On March 14, 1967, at about 3:00 P.M. Detective Jones of the Dade County Public Safety Department, who was investigating the occurrences of March 4th, brought photographs of seven men for the complainants to examine. He gave lengthy testimony concerning the careful manner in which he selected the pictures and displayed them to each of the complainants so that no improper factor would influence their selection of any of the pictures as depicting their assailants. Each complainant examined the pictures separately and independently and each separately and independently identified the appellant, Jessie Tafero, as the Jessie who was in their apartment on March 4th. Each complainant so testified at trial. Each complainant further testified that she had separately and independently identified the appellant as the Jessie in question at a lineup in the Dade County Public Safety Department Building on the evening of March 14, 1967. Each complainant also made a separate and independent in-court identification of appellant as the Jessie who was in their apartment on March 4th. No objection was made by appellant's counsel to *567 any portion of the identification testimony of either identifying witness.
The first point presented by the appellant urges that the trial court committed reversible error when it permitted the complainants to testify that they identified the appellant from photographs when such identification occurred in the absence of defense counsel. In his argument supporting this point the appellant urges an extension of the law announced by the Supreme Court of the United States in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).
In United States v. Wade the Court held that a courtroom identification may not be received in evidence if it is based upon an observation made at a lineup at which the defendant was not represented by counsel. In Stovall v. Denno the Court held that the Wade case applied only prospectively.
"We hold that Wade and Gilbert [Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967)] affect only those cases and all future cases which involve confrontations for identification purposes conducted in the absence of counsel after this date [June 12, 1967]." 388 U.S. at 296, 87 S.Ct. at 1969.
Since the photographic and lineup identifications both took place on March 14, 1967, we conclude, because of the holding in Stovall v. Denno, that the holding in United States v. Wade does not affect the circumstances in the present case and does not supply authority for the appellant's argument.
But the appellant's argument is untenable even if the photographic identification had taken place after June 12, 1967. We think that nothing in the Wade case validly leads to the conclusion urged by the appellant; we are certain that nothing in the Stovall case does. A display of photographs for investigative purposes is not violative of due process unless there is a demonstration that the circumstances under which the display was made were unfair or untrustworthy. The record reveals an earnest attempt by the police to assure they had the right man before they charged him. In Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), the Court declared:
"Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs. The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." 390 U.S. at 384, 88 S.Ct. at 971.
We think it reasonable to conclude that the foregoing quotation inferentially refutes the appellant's argument, even though the issue raised by the appellant was not directly raised in the Simmons case.
Having considered the facts of the present case and having concluded that the photographic identification procedure was in no way suggestive and did not give rise to a "very substantial likelihood of irreparable misidentification, we hold that the *568 appellant has not demonstrated error under his first point.
In his second point the appellant urges that the court committed reversible error by admitting evidence of a wholly separate crime which was of no evidentiary value except to inflame and prejudice the jury. Miss C.R. was permitted to testify that on March 22, 1967, two men assaulted and brutally beat her. She testified that she recognized the voice of one of the men as that of the Billy who was in her apartment for eleven hours on March 4th. The test of the admissibility of evidence of a separate crime is its relevancy to the crime for which the defendant is being tried. Williams v. State, Fla. 1959, 110 So.2d 654. The testimony admitted was relevant to establish the guilt of the appellant's co-defendant, Weinshenker. The following exchange between appellant's counsel and Miss C.R. make it clear that the appellant was in no way implicated in the incident:
"Q You are not insinuating that one of the two men was this defendant [Tafero] here (indicating); are you?
A No.
Q You know it was not; do you not?
A Of course. He was in jail."
We think there was no room for any misunderstanding by the jury and no possibility that the appellant was in any way prejudiced.
The appellant urges next that the evidence is insufficient to establish that he was one of the men in the complainants' apartment on March 4th. Under this point the appellant argues that there are conflicts in the evidence as to the apparel worn by the man called Jessie, and he urges that the evidence is weakened by the inability of the victims to select any of the photographs shown to them as representing the man called Billy. However, the record contains ample substantial evidence which supports the verdict and judgment, namely, the unequivocal testimony of both complainants that the appellant was the man referred to as Jessie. An appellate court will not disturb a verdict and judgment if there is ample substantial evidence to support them. Sealey v. State, Fla. 1950, 46 So.2d 894; Fouts v. State, 101 Fla. 1248, 133 So. 81, 83 (1931).
In his fourth point the appellant urges that the trial court erred in permitting the prosecutor to ask the following questions and elicit the following answers on cross-examination of the appellant:
"Q Do you remember when the police came to arrest you?
A Yes; very well.
Q Did you have a conversation with them?
A You know, an arresting conversation, I imagine.
Q Arresting conversation. Okay. Did you tell them what you were doing on March 4, 1967?
A Well, when they came and arrested me, I didn't know what to think. I didn't know what anything was about. I just didn't say anything about it.
Q You did not tell them anything about where you were?
A I just told them I didn't know anything about it and that is all.
Q Did you tell them where you were on March 4?
A No, sir.

*569 Q You did not?
A No, sir; I didn't. They didn't ask me and 
Q Let me make it more specific, because I do not want to mislead you.
Did you tell Bob Jones where you were on March 4, 1967?
A No, sir.
Q You did not. You said nothing about your whereabouts; is that your testimony?
A No, sir.
Q Have you ever advised the Public Safety Department or the Sheriff's Office or the Grand Jury.
A No, sir.
Q Or the Justice of the Peace as to your whereabouts?
A I was advised 
Q As to your whereabouts on March 4, 1967?
A No, sir. I was advised by my attorney not to discuss it with anyone."
Since no objection was voiced at trial, the question presented is whether the foregoing exchange was fundamental error which, by violating the appellant's right to remain silent, deprived the appellant of a fair trial.
The reasoning of the Supreme Court of Florida in State v. Young, Fla. 1968, 217 So.2d 567 [filed December 10, 1968], leads us to conclude that no fundamental error was committed.
What is more, we think defense counsel opened the door for the prosecutor earlier in the trial by asking the following questions:
(1) "[Of Detective Jones on cross-examination] Did Mr. Tafero completely deny any knowledge of this case?"
(2) "[Of the appellant on direct examination] Now, have you at all times upon being asked about your participation in this case, always denied it to everyone?"
The answer to both questions was, "Yes, sir." By asking Detective Jones and the appellant what the appellant said to the authorities concerning the crimes he was charged with, defense counsel made it proper for the prosecutor to question the appellant not only about what he said to the authorities but about what he did not say as well. See Gandy v. United States, 386 F.2d 516, 518-519 (5th Cir.1967), and cases cited therein.
The fifth point is related to the second. The appellant contends that the trial court erred by failing sua sponte (defense counsel having failed to file a request for such an instruction) to instruct the jury that they should not consider the testimony concerning the March 22nd attack on Miss C.R. in reaching their verdict on the charges against the appellant. There was no need for such an instruction because, as we indicated in deciding the second point, the testimony in question could not prejudice the appellant.
Having examined each point as it was presented in the appellant's brief and in oral argument and having held that the appellant has demonstrated no prejudicial error, we affirm the judgments and sentences appealed.
Affirmed.