406 So.2d 89 (1981)
Jesse Joseph TAFERO, Appellant,
v.
The STATE of Florida, Appellee.
No. 79-1121.
District Court of Appeal of Florida, Third District.
November 24, 1981.
*90 Carol King Guralnick, Miami, for appellant.
Jim Smith, Atty. Gen., Anthony Musto, Asst. Atty. Gen., for appellee.
Before SCHWARTZ and DANIEL S. PEARSON, JJ. and PEARSON, TILLMAN (Ret.), Associate Judge.
DANIEL S. PEARSON, Judge.
A decade after we affirmed on direct appeal Jesse Tafero's 1967 convictions for the multiple offenses of assault with intent to commit rape, a crime against nature, *91 entering a residence with intent to commit robbery, and robbery,[1]see Tafero v. State, 223 So.2d 564 (Fla.3d DCA), cert. denied, 225 So.2d 912 (Fla. 1969), Tafero moved the trial court to grant him a new trial under Florida Rules of Criminal Procedure 3.580 and 3.600. His claim for relief was based on assertions that years after his convictions had become final, (a) a third party confessed that he, not Tafero, had committed the crimes, and (b) he first learned that the two victims of the crimes had admitted to another third party that their trial testimony identifying Tafero as a perpetrator was perjurious.[2] The trial court, after conducting an evidentiary hearing, denied a new trial. Tafero appeals.

I.

The Trial Court's Jurisdiction
Tafero's motion for new trial based on asserted newly discovered evidence was, as the trial court recognized, untimely. The motion was filed in March 1979, more than eleven years after the convictions. In 1967, Florida Rule of Criminal Procedure 3.590(a) provided that such a motion be made within four days, or, with the court's permission, within fifteen days, after rendition of the verdict.[3] The time limit provided in the rule is jurisdictional. Hallman v. State, 371 So.2d 482 (Fla. 1979); Thomas v. State, 250 So.2d 308 (Fla. 4th DCA 1971); Murray v. State, 191 So.2d 292 (Fla.3d DCA 1966). Most certainly, Tafero's motion came too late to entitle him to relief under this rule.
Equally certain is that the trial court could not obviate this jurisdictional impediment by treating the untimely motion for new trial as a petition for writ of coram nobis. Without leave of the appellate court which affirmed the conviction on appeal and issued its mandate, a trial court is without jurisdiction to consider the coram nobis petition which seeks to set aside that conviction. Smith v. State, 400 So.2d 956 (Fla. 1981). See also Hallman v. State, supra.[4] Since it is this court which affirmed Tafero's conviction,[5] and since our leave to petition the trial court for coram nobis relief was neither sought nor given, the trial court was without jurisdiction to consider Tafero's claims for relief as such a petition.[6]

*92 II.

The Sufficiency of the Motion As A Coram Nobis Application
Following the implicit teaching of Hallman v. State, supra, that the interest of judicial economy is best served by concluding this matter here and now without requiring Tafero to comply with the foregoing procedural requirement,[7] we treat Tafero's appeal as a request for permission to apply to the trial court for a writ of error coram nobis. Applying the Smith-Hallman test for determining the sufficiency of Tafero's application, we decide that the alleged new facts, had they been presented to the trial court in 1967, would not "conclusively have ... prevented the entry" of the convictions; and, therefore, the petition must be denied.
The facts elicited at Tafero's 1967 trial are essentially recounted in our prior opinion affirming Tafero's conviction:
"Miss C.A.B. and Miss C.R. shared an apartment in Bay Harbor Islands, a municipality near the City of Miami Beach, Miss C.A.B. was awakened about 6:00 A.M., March 4, 1967, by a man with a gun who referred to himself as Billy. Miss C.A.B. testified that Billy got into bed with her and forced her to commit an unnatural sex act upon him. Miss C.R. arrived home at about 6:30 A.M. Her roommate opened the door for her. When she entered she saw a naked man with a nylon stocking over his face. He forced Miss C.R. into the bedroom where he tied her hands and feet behind her while she lay on the floor.
"At approximately 8:30 A.M., in response to a telephone call from Billy, a second man came to the apartment. He was called Jessie by his companion. Jessie forced Miss C.R. to have intercourse with him and used force upon her in an attempt to have her perform an unnatural sex act upon him. This attempt failed. But Jessie did force Miss C.A.B. to perform an unnatural sex act upon him. The men later ransacked the apartment. Miss C.R. was blindfolded and unblindfolded several times during the approximately eleven hours the men held her and Miss C.A.B. captive. Miss C.A.B. was not blindfolded. Billy's face was masked only part of the time. Jessie's face was not masked. At about 5:00 P.M. the suspicions of a neighbor were aroused, and when he attempted to enter the apartment forcibly, the two men escaped by jumping from the balcony." 223 So.2d at 566.
Our prior opinion also observed that the victims, Miss C.R. and Miss C.A.B., testified that they separately identified Tafero as the man they knew as Jessie in a photo lineup and a live lineup. Each identified Tafero in court. Although Tafero's trial counsel did not object to this identification testimony, Tafero challenged this testimony on direct appeal. In answer to this challenge, we found that the record contained unequivocal testimony by both victims that Tafero was the perpetrator and that the *93 identification procedures were in no way suggestive. Tafero v. State, 223 So.2d at 567, 568.
The coram nobis test requires that we envision that Tafero's 1967 trial included the confession of a third party that he, not Tafero, was the man called Jessie, and the statement of another witness that Misses C.R. and C.A.B. admitted to him that they knew Tafero was not the perpetrator of the crimes.[8] The most that can be said about this new evidence is that, if believed, it would probably have changed the verdict of the jury.[9] While that is sufficient to satisfy the applicable test for a timely motion for new trial,[10] it is not sufficient under *94 the test for coram nobis. Clearly, since the third party confession and the impeachment testimony would not render the trial testimony of Misses C.A.B. and C.R. insufficient so as to require the trial court to enter a judgment of acquittal in Tafero's favor and, at best, would raise a jury question as to the identity of the perpetrator, the newly discovered evidence would not have conclusively prevented the entry of the 1967 convictions.[11] Therefore, had Tafero's application been made to us, we would have denied him permission to apply to the trial court for a writ of error coram nobis, and now, treating his appeal as such an application, we deny it.

III.

An Appeal To The Wrong Court
Tafero's efforts, below and here, are not those of a man seeking to undo now fourteen-year-old convictions merely to cleanse his record. As his brief so poignantly tells us, the 1967 convictions later played a critical part in Tafero receiving, and the Florida Supreme Court affirming, see Tafero v. State, 403 So.2d 355 (Fla. 1981), death penalties for murders committed by Tafero in 1976, while on parole from the convictions he now attacks.[12] He urges us to consider this fact in determining whether he is entitled *95 to relief from his 1967 convictions and, in effect, carve a special rule in such cases This we cannot do. Smith v. State, supra; Hallman v. State, supra.
We do, however, emphasize that we decide only that Tafero's coram nobis petition must fail because not within the discrete reach of that writ. Whether this same evidence should be considered in mitigation of the aggravating factors used to justify the imposition of the death penalty is a question not before us and one which must be directed to the courts which imposed and affirmed that penalty. Had Tafero sought to present evidence of this nature at his death penalty hearing, its admission would have been required. Green v. Georgia, 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979) (denial of due process to exclude at death penalty sentencing hearing evidence that Green's co-defendant admitted to third party that he killed the victim in Green's absence); Mines v. State, 390 So.2d 332 (Fla. 1980) (error to deny defendant right to introduce at death penalty hearing evidence of mental and emotional disturbance, despite rejection of insanity defense at guilt phase of trial). And see Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); Perry v. State, 395 So.2d 170 (Fla. 1981) (a defendant may not be precluded from offering as a mitigating factor any aspect of his character and record). Cf. Davis v. State, 597 S.W.2d 358 (Tex. Crim. App. 1980) (state may introduce at death penalty hearing evidence of the details of defendant's prior convictions to enable jury to understand range and severity of defendant's prior conduct). Assuming, arguendo, that the evidence discovered after Tafero's 1967 trial was likewise discovered after his 1976 death penalty proceeding and was unavailable beforehand, the question to be answered another day by another court is whether Tafero can have this evidence considered in mitigation of the death penalty, despite its earlier affirmance by the Supreme Court.[13]
*96 Accordingly, we affirm the trial court's denial of Tafero's motion to vacate under Rule 3.850; we treat Tafero's appeal from the trial court's denial of his motion for new trial as a petition for writ of coram nobis and deny such petition.
PEARSON, TILLMAN (Ret.), Associate Judge, concurring especially.
I concur in the majority's affirmance. However, I would note that even if appellant's claim for relief was cognizable via a motion for new trial, affirmance would still be mandated. This is so because the trial judge made the requisite finding that even if the newly-discovered evidence had been presented at trial, "it is not probable that it would have changed the verdict or the finding of the trial court." The majority opinion states that the new evidence, if believed, would probably have changed the verdict and would have been sufficient to satisfy the applicable test of a timely motion for new trial. However, the majority, in footnote 9, correctly points out that the "trial court concluded that neither the third party confessor nor the third party witness was worthy of belief." Appellant has failed to demonstrate that the trial judge abused his discretion (a) in determining that the testimony of Lesier and Sheley was not worthy of belief and (b) in denying the motion for new trial. Weston v. State, supra; Walden v. State, 310 So.2d 426 (Fla.3d DCA 1975).
NOTES
[1] After his convictions, which stemmed from a single criminal episode which began near dawn and ended near dusk on March 4, 1967, Tafero served approximately six years of the cumulative twenty-five-year sentence imposed and was released on parole.
[2] This evidence was indisputably not known by Tafero at the time of his trial. That which was known, Tafero's appellate afterthoughts, earlier found its way into a collateral attack filed on the heels of his unavailing direct appeal. In 1971, we affirmed the denial of that motion to vacate. See Tafero v. State, 242 So.2d 470 (Fla.3d DCA 1971).
[3] Rule 3.590(a) was later amended to provide for a ten-day period within which to file a motion for new trial.
[4] While Hallman at one point states that the writ of error coram nobis can be issued only by the affirming appellate court, 371 So.2d at 484, it is apparent that the annulment of the judgment is actually accomplished by the trial court which conducts the evidentiary hearing after the appellate court has determined the legal sufficiency of the petition and granted leave to the trial court to proceed. See Chambers v. State, 117 Fla. 642, 158 So. 153 (1934).
[5] The Florida Supreme Court's denial of certiorari without opinion, Tafero v. State, 225 So.2d 912 (Fla. 1969), does not constitute an affirmance of Tafero's conviction so as to make it necessary for Tafero to seek leave of that court. See Knight v. Munday Plastering Company, 220 So.2d 357 (Fla. 1969) (a denial of certiorari comprehends no decision on the merits).
[6] We note that as an alternative to his motion for new trial, Tafero sought to vacate his convictions under Florida Rule of Criminal Procedure 3.850. While a motion under Florida Rule of Criminal Procedure 3.850 knows no time limits and may be filed in the trial court without leave of the affirming appellate court, newly discovered evidence is not a basis for relief under that rule. Smith v. State, supra; Hallman v. State, supra. The contrary suggestion in earlier cases, see, e.g., State v. Gomez, 363 So.2d 624 (Fla.3d DCA 1978); Walden v. State, 310 So.2d 426 (Fla.3d DCA 1975); Kellerman v. State, 287 So.2d 702 (Fla.3d DCA 1973); State v. Pitts, 241 So.2d 399 (Fla. 1st DCA 1970), vacated on other ground, Pitts v. State, 247 So.2d 53 (Fla. 1971); Diamond v. State, 233 So.2d 418 (Fla. 4th DCA 1970); Fast v. State, 221 So.2d 203 (Fla.3d DCA 1969) was, in our view, overruled, sub silentio, by Hallman and Smith. See Henzel v. State, 390 So.2d 397, 399 n. 2 (Fla.3d DCA 1980). The cases suggesting that newly discovered evidence was a basis for 3.850 relief were, for the most part, decided under the mistaken belief that coram nobis had been supplanted by Rule 3.850 or its predecessor, Rule 1.850. The only assertion in Tafero's motions cognizable under Rule 3.850 was that the State violated the mandate of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), when it withheld evidence of an initial description of the attacker made by the victims inconsistent with their later identification of Tafero. This ground is totally without merit. To this day, Tafero has failed to point to the existence of such evidence; his counsel's suggestions during the 1967 trial that such evidence existed are, moreover, the most telling indication that counsel, by the use of due diligence, should have then discovered such evidence; there is absolutely no showing that the State was aware of, no less intentionally withheld, such descriptions; and other inconsistent descriptions made by the victims were made available to defense counsel during the 1967 trial. Therefore, the trial court's denial of Tafero's Rule 3.850 motion is affirmed on the ground that this Brady claim is without merit, and the newly discovered evidence claims are not cognizable under this rule.
[7] The trial court undoubtedly had this same judicial economy in mind when, although recognizing that the coram nobis application should have been made to this court, it proceeded with the evidentiary hearing.
[8] Neither Miss C.A.B. nor Miss C.R. was called to testify at the hearing. This new evidence is, therefore, impeachment, not recantation. However, had these two witnesses testified under oath at the hearing on the motion for new trial that they had lied at Tafero's trial, and that some other person committed the crimes, this testimony, if believed, see Mollica v. State, 374 So.2d 1022 (Fla.2d DCA 1979), would have nullified Tafero's connection with the crimes. Where a witness at a later point in a trial contradicts testimony given at an earlier point in the trial, the earlier testimony is rendered insufficient for jury consideration. 32A, C.J.S., Evidence, § 1043 (1964); Adelsberger v. Sheehy, 332 Mo. 954, 59 S.W.2d 644 (1933); Taliaferro v. Barnes Hospital, 586 S.W.2d 429 (Mo. App. 1979); Griggs v. A.B. Chance Co., 503 S.W.2d 697 (Mo. App. 1973); Morgan v. Krey Packing Co., 454 S.W.2d 939 (Mo. App. 1970). Cf. United States v. Orrico, 599 F.2d 113 (6th Cir.1979) (prior inconsistent statements, although admitted as substantive evidence, are, standing alone, insufficient to prove any element of the crime charged). It would appear that underlying this rule is the presumptive trustworthiness surrounding immediate recantation. But where recantation comes after the trial, concern about the trustworthiness of the recantation is more likely, and that, combined with the policy that there must be an end to litigation, leads to the rule that recantation of the sole inculpating testimony does not require the issuance of a writ of coram nobis. We observe that this concern about the trustworthiness of post-trial recantation is less justified than once it might have been in light of the passage in 1972 of Section 837.021, Florida Statutes. That statute authorizes prosecution for perjury by proof of two contradictory sworn statements in official proceedings without the necessity of proof that one of the statements is false, see, e.g., Johnson v. State, 343 So.2d 110 (Fla.2d DCA 1977), and the offense, for limitations purposes, must be deemed to have been committed at the time of the second sworn statement. But trustworthiness aside, it would appear that full recantation of the only testimony upon which the conviction can stand would at least make a petition for writ of coram nobis facially sufficient, notwithstanding that thereafter the writ does not issue because the recantation is disbelieved.
[9] After the evidentiary hearing on Tafero's motion for new trial, see n. 7, supra, the trial court concluded that neither the third party confessor nor the third party witness was worthy of belief.

The evidence at the hearing below reveals that in December 1975, one Robert Sheley, who testified at the hearing, wrote to Tafero's mother advising her that he, not Tafero, committed the 1967 crimes and that he would like to straighten it out. Sheley later gave an affidavit to that effect. Sheley's account of the 1967 crimes to the extent he could recall was reasonably accurate. He explained that he was called Jessie for Jessie James and that his co-perpetrator was indeed Philip Weinshenker, Tafero's co-defendant at trial, who was called "Billy" for Billy the Kid [Weinshenker's convictions were affirmed by us in Weinshenker v. State, 223 So.2d 561 (Fla.3d DCA 1969)]. Sheley could neither describe in any detail the items taken during the robbery nor name the hotel where he stayed on the eve of and during the planning stages of the crime. A polygraph operator testified that Sheley's confession was truthful. But see Walden v. State, 310 So.2d 426 (Fla.3d DCA 1975) (court may reject third party confession supported by polygraph test results). While Sheley denied ever meeting Tafero and no motive for his coming forward was established, any prosecution of Sheley for these 1967 crimes was barred by the statute of limitations.
Tafero also presented the testimony of one Billy Leiser, who initially had been arrested with Tafero for the crimes, identified by one of the victims, and later released. Leiser said that after the charges were dropped against him, he contacted the victims to see why they had identified him. He said that the victims told him that they knew Leiser and Tafero were not the assailants, but that Tommy Altamura, a boyfriend of one of the victims, pressured them to identify Leiser and Tafero so that he could shake them down for money. Leiser, who knew of these statements before Tafero's trial, said he did not come forward sooner because he was afraid of Altamura, who was well known as Tommy the Enforcer. When Altamura was killed years later, Leiser came forward.
[10] Even under the new trial "probability test" (i.e., the court shall grant a new trial if the new and material evidence, if introduced at trial, would probably have changed the verdict and finding of the court), neither the existence of third party confessions, see, e.g., Walden v. State, 310 So.2d 426 (Fla.3d DCA 1975); Walden v. State, 284 So.2d 440 (Fla.3d DCA 1973); State v. Pitts, 241 So.2d 399 (Fla.1st DCA 1970); Fast v. State, 221 So.2d 203 (Fla.3d DCA 1969); accord, Baker v. State, 336 So.2d 364 (Fla. 1976); State v. Gomez, 363 So.2d 624 (Fla.3d DCA 1978), nor recantation by trial witnesses, see, e.g., Bell v. State, 90 So.2d 704 (Fla. 1956); Mollica v. State, supra; Weston v. State, 351 So.2d 75 (Fla.1st DCA 1977), requires that a new trial be granted.
[11] It appears, at least theoretically, that new evidence that another person committed the crime in the face of trial testimony identifying the defendant as the perpetrator can never satisfy the conclusiveness test. The test could, however, likely be satisfied by newly discovered evidence that no crime was committed (the decedent said to have been murdered is found alive), that the defendant was under a disability which would have prevented conviction (insanity, non-age, etc.), or that the sole testimony upon which conviction rests has been recanted and the recantation believed (see n. 8, supra). To be sure, the cases are uneven. For example, in Ex parte Welles, 53 So.2d 708 (Fla. 1951), where the defendant had been identified at trial as the perpetrator of an armed robbery, nonconclusive newly discovered evidence that another person had been shown to have committed the crime and that the defendant had a complete alibi was held sufficient for coram nobis relief. And in State v. Gomez, supra, although applying the coram nobis conclusiveness test to a Rule 3.850 proceeding, the court indicated that confessions by a co-defendant exonerating the defendant would be sufficient. Welles involved a state confession of error, see also Pitts v. State, 247 So.2d 53 (Fla. 1971), but surely the fact that the state agrees that a conviction should be set aside because of newly discovered evidence neither prevents the entry of the original judgment nor fosters the rule of finality. Nor can it be said that there is a special class of cases falling outside of the conclusiveness test in which relief can be afforded "in the interests of justice." If that were so, the "interests of justice" test would completely subsume the conclusiveness test and allow a court to grant coram nobis relief in all cases where there is a strong probability that the verdict would have been otherwise. The use of "interests of justice" in the coram nobis context must be carefully distinguished from its use in the context of an appellate court recognizing fundamental error on appeal, see cases cited at n. 14 in Tibbs v. State, 397 So.2d 1120, 1126 (1981), or from its use in Tibbs itself. There, because the Florida Supreme Court reversed its earlier position upon which Tibbs relied in petitioning for certiorari, an action which in view of the court's later analysis would serve to detriment Tibbs, the Supreme Court, in the "interests of justice," let stand the lower court grant of a new trial to Tibbs. We consider that Hallman and Smith represent an effort to re-establish the rule of finality, permitting only the rarest exceptions.
[12] One of four aggravating factors found by the trial court and approved by the Florida Supreme Court was:

"The defendant does have a significant history of prior criminal activity involving the use or threat of violence to the person of another. The Defendant was convicted of the crime of Assault with Intent to Commit Rape on December 28th, 1967 in Dade County, Florida and was sentenced to five years in State Prison. The Defendant was convicted of the crime of Crime Against Nature in Case No. 67-5285A in Dade County on December 28th, 1967 and was sentenced to five years imprisonment to be served consecutively with Case No. 67-5284A. In Case No. 67-5284A, the Defendant, JESSIE JOSEPH TAFERO, was found guilty of Breaking and Entering An Apartment Dwelling and Assaulting Persons Lawfully Therein, and he was sentenced to five years imprisonment on December 28th, 1967."
It is apparent that this "significant history of prior criminal activity," that is, the 1967 convictions, was critical, if not essential, in affirming Tafero's death sentences.
[13] In respect to this issue, we do not view Hallman as an impediment. To be sure, the Hallman court held, three justices dissenting, that Hallman was not entitled to a death sentence rehearing on his "newly discovered evidence" since had such evidence "been presented during the trial, the trial court would not have been precluded from entering a death sentence." 371 So.2d at 486. Apart from the serious problem presented by employing a coram nobis sufficiency test to the totally different question of whether the death penalty would have been imposed, see Stephens v. Zant, 631 F.2d 397 (5th Cir.1980), cert. granted, ___ U.S. ___, 102 S.Ct. 90, 70 L.Ed.2d 82 (1981) (the existence of sufficient other aggravating factors does not justify affirming a death penalty where it is possible that the jury recommended death because of a different aggravating factor impermissibly considered), we view Hallman's pronouncement as necessarily confined to the facts of that case. In Hallman, as distinguished from the present case and most others, the "newly discovered evidence" was that the negligence of the hospital was an intervening cause of the victim's death. Such evidence did not have the slightest bearing on the defendant's character, prior record, the extent of involvement in the offense, or the manner in which it was committed. A court may very well be justified in rejecting evidence, proffered in mitigation of the death penalty, that the victim was of advanced age and sickly and would have died soon anyway. While Hallman's evidence certainly presents a more serious contention, it is still irrelevant to his behavior. Thus, the court in Hallman might have found that the facts suggesting a sentence of death were still so clear and convincing that virtually no reasonable person could differ. See Jacobs v. State, 396 So.2d 713 (Fla. 1981); Williams v. State, 386 So.2d 538 (Fla. 1980). Finally, we note that while the existence of other aggravating circumstances will sustain the imposition of the death penalty without the need for further fact-finding where "only the manner in which it was considered by the court in its findings of fact" is challenged, Mikenas v. State, 407 So.2d 892 (Fla. 1981); see also Smith v. State, 407 So.2d 894 (Fla. 1981), where the challenge is to the admission of evidence of aggravating factors, see Elledge v. State, 346 So.2d 998 (Fla. 1977), or to the exclusion of evidence of mitigating factors, Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), the existence of other aggravating circumstances does not obviate the need for a further recommendation from the jury.