433 So.2d 1263 (1983)
Clifford Leon ASHLEY, Appellant,
v.
STATE of Florida, Appellee.
No. AR-341.
District Court of Appeal of Florida, First District.
June 27, 1983.
*1265 Robert E. Warren, Jacksonville, for appellant.
Gregory C. Smith, Asst. Atty. Gen., Tallahassee, for appellee.
ZEHMER, Judge.
This matter is before us on application for leave to file a petition for writ of error coram nobis in the trial court or, alternatively, on petition for writ of habeas corpus. As grounds, petitioner Ashley alleges that new evidence has been discovered which meets the traditional coram nobis requirements and establishes substantial violations of his constitutional rights under both the United States and Florida Constitutions. We construe the application as alleging the following material facts.
Ashley was convicted in the circuit court under two separate informations filed April 30, 1975, alleging the unlawful sale of less than 10 grams of heroin. The first information alleged a sale to an undercover police officer on February 5, 1975, and the second alleged a sale to the same officer on February 18, 1975. Ashley retained private counsel, was arraigned on both informations on May 9, 1975, and was tried in the second case on October 15, 1975. Judgment was entered on the jury's verdict of guilty, and Ashley was sentenced to 15 years imprisonment. Ashley was subsequently declared indigent, and a public defender was appointed to represent him in the January 27, 1976, trial on the remaining information, in which he was convicted and sentenced to 15 years imprisonment, to be served consecutively with his first sentence. Ashley's convictions were appealed and affirmed by this Court, without opinion, on December 17, 1976. Ashley v. State, 341 So.2d 294 (Fla. 1st DCA 1976).
The cases against Ashley were made by officer Daniels, who was being used as an undercover agent by the Jacksonville sheriff's office while on loan from another county. Shortly after Ashley's arraignment in May 1975, his privately retained counsel learned through discovery proceedings that a confidential informant named Palmore, also known as "Loggie," had been used by the sheriff's department to help make the cases against Ashley and was present with officer Daniels at both alleged sales transactions. Ashley's private counsel made repeated but unsuccessful attempts to locate that confidential informant. Although Ashley's counsel did not know precisely what Loggie would testify, he believed that such testimony would be favorable to Ashley and therefore sought continuance of the trial pending further efforts to locate Loggie. On discovery, officer Daniels denied that Loggie had any material involvement, but Daniels's supervisor testified that Loggie was present and witnessed both sales transactions. Ashley's counsel filed a motion to compel the state to produce Loggie; and at the hearing before the circuit court on August 11, 1975, the state denied any knowledge as to Loggie's whereabouts and professed an inability to produce Loggie under any circumstances. The circuit court, accepting the state's representations, denied the motion and instructed the state that if it subsequently learned Loggie's whereabouts it had the affirmative duty to notify the court and call forward for further hearing *1266 defense counsel's motion to compel. The court specifically reserved ruling on the materiality of Loggie as a witness to the case.
Loggie had worked with officer Daniels throughout the entire period of his undercover activities. In early May 1975, Loggie was a principal witness for the state in a murder trial, after which, because of rumored threats on Loggie's life, a deputy sheriff drove him to the Jacksonville airport, provided him $1,000 expense money, and put him on a plane to Los Angeles, California. That officer claimed not to have inquired as to Loggie's address and made no arrangements to contact Loggie thereafter. After the hearing on August 11, the assistant state attorney prosecuting Ashley, in compliance with the trial court's directive, notified all state personnel involved in the case, including Daniels, that he was to be advised immediately if anyone learned Loggie's location. Thereafter, on September 13, 1975, Loggie called officer Daniels collect from California. Although they talked for approximately 20 minutes, officer Daniels claims he did not determine Loggie's address or phone number. Petitioner's private counsel learned of this call on September 17, 1975, and again sought a continuance of the trial until Loggie could be located and returned to Jacksonville. The trial court, however, denied further continuances and tried petitioner on October 15, 1975, without benefit of Loggie's testimony. The only witness testifying to petitioner's participation in the alleged drug sale was officer Daniels. Ashley's defense was that he did not participate in the drug transaction.
Ashley, although unable to state with reasonable certainty what Loggie's testimony would be, continued to complain that the state, by sending Loggie from Florida to California with full knowledge that he was a material witness to the alleged drug transactions, had deprived him of his constitutional rights to a fair trial and compulsory process for the attendance of witnesses, in violation of the Sixth and Fourteenth Amendments to the United States Constitution. After Ashley's conviction was affirmed on appeal, he filed, pro se, a motion for post-conviction relief under Rule 3.850, Florida Rules of Criminal Procedure, which was denied by the circuit court. That order was affirmed by this Court with opinion in Ashley v. State, 350 So.2d 839 (Fla. 1st DCA 1977), principally on the ground that all matters alleged had been or could have been raised on a direct appeal from the judgment of conviction. Having exhausted his state court remedies, Ashley next sought relief in the federal courts, persisting in his contention that he had been denied due process and the right to compulsory process. Ashley's petition for habeas corpus was denied by the federal district court. On appeal, the Fifth Circuit Court of Appeals, noting that the state was guilty of negligence in respect to Loggie's unavailability for trial, nevertheless held that the writ of habeas corpus was properly denied for lack of a "colorable need" for Loggie's testimony because of Ashley's inability to represent exactly what Loggie would testify. Ashley v. Wainwright, 639 F.2d 258 (5th Cir.1981).
Shortly after this decision, Ashley's court-appointed counsel in the federal court proceedings located and interviewed Loggie. On April 17, 1981, counsel obtained an affidavit in which Loggie stated: that he worked as a confidential informant for the Duval County Sheriff's Department from December 1974 through mid-May 1975 and worked with officer Daniels in making the two cases against Ashley; that he was present on the two occasions when Ashley was alleged to have sold drugs to Daniels; that Ashley did not sell any drugs to Daniels on those occasions; that he was promised by an assistant state's attorney that he would not have to take the witness stand or testify against any individual named as a defendant in any of the drug sales in which he participated; that he had been given expense money and driven to the airport to board a plane to Los Angeles in May 1975; that he had "always kept the sheriff's department in Duval County, Florida, aware of my location and aware of how I could be reached"; that shortly after the telephone *1267 call to officer Daniels in September 1975, the sheriff's department had sent him money in Los Angeles to aid his move to Eufala, Alabama, and that he had advised the sheriff's department how they could locate him in Eufala through his family; that he called officer Daniels in September 1975 and asked if he could do more undercover work or if he was needed in Florida, but officer Daniels advised him not to return to Florida at that time; and that at the time this call was made, he was not aware of and did not discuss the fact that Ashley's trial was pending.
Petitioner's application further alleges that Ashley's counsel submitted this information to the Fifth Circuit Court of Appeals by motion to recall mandate. The state resisted the motion, "claiming, among other things, that this newly discovered evidence had never been presented to either the state trial or appellate court for disposition of the question of a possible Sixth Amendment violation" and "urged that the State was entitled to the first opportunity to consider the effect of the newly discovered evidence," citing Hart v. State, 634 F.2d 987 (5th Cir.1981). By order dated May 20, 1981, the Fifth Circuit denied petitioner's motion to recall mandate, specifically indicating that it was not passing on the merits of the petitioner's claim of newly discovered evidence and that its denial was without prejudice to petitioner's right to reassert his claim in federal court after he had first exhausted his state court remedies.
Thereafter, through the same court-appointed attorney (acting pro bono publico in this Court), petitioner presented these facts in the application now under consideration, contending that they clearly demonstrate that he has been denied a fair trial and the right to compulsory process.[1] The state opposes the application, contending that, first, these matters were adjudicated on petitioner's previous appeals from the judgment of conviction and the order denying him post-conviction relief under Rule 3.850, thereby barring his right to be reheard on this application. Second, the state contends that the alleged newly discovered evidence does not meet the traditional coram nobis requirements.[2]
We disagree with the state's contention that these matters have been previously adjudicated against petitioner. Petitioner's defense in both cases was that the drug sales alleged to have been made by him never took place. Before obtaining Loggie's affidavit, petitioner's counsel was never in a position to represent with reasonable certainty to any court, state or federal, that Loggie would directly refute Daniels's testimony that petitioner participated in the drug sales. Petitioner could and did assert only that according to Daniels's superior Loggie was present when the alleged transactions occurred and he believed that Loggie's testimony would be favorable. Now, for the first time in this state court proceeding, petitioner has been able to show what Loggie's testimony would have been and why it would have been material to his defense. According to petitioner's application, *1268 he has heretofore been precluded from showing the requisite materiality or "colorable need" for Loggie's testimony to support his defense and to demonstrate participation by officers of the sheriff's department in making Loggie unavailable for trial. We conclude, therefore, that the questions raised in petitioner's present application have not been conclusively adjudicated against petitioner in any prior proceedings.
The state's contention that petitioner's application does not meet the traditional requirements for a writ of coram nobis, however, is not so easily determined. Because petitioner is attempting to set aside his conviction and obtain a new trial based on newly discovered evidence after this Court affirmed his judgment of conviction, petitioner must first apply to this Court for leave to file a petition for writ of error coram nobis. Hallman v. State, 371 So.2d 482 (Fla. 1979); Smith v. State, 400 So.2d 956 (Fla. 1981); Booker v. State, 413 So.2d 756 (Fla. 1982). If the application is granted, that is equivalent to an order or mandate to the trial court to hold an evidentiary hearing on the truthfulness of the alleged facts and to allow the writ if the allegations are found to be true. Russ v. State, 95 So.2d 594, 597 (Fla. 1957); Chambers v. State, 117 Fla. 642, 158 So. 153 (Fla. 1934). The requisites of a petition for coram nobis were set out in Smith v. State, supra, at page 960 as follows:
The alleged facts relied upon must be fully disclosed since the appellate court must be afforded full opportunity to determine whether prima facie grounds are established. Furthermore, the evidence upon which the alleged facts can be proved and the source of the evidence must be asserted. The facts alleged must not have been known by the court, by the party, or by counsel, at the time of trial, and it must be made clear that defendant or his counsel could not have discovered them through the use of due diligence. In determining the sufficiency of the application, we apply a strict test of conclusiveness predicated on the need for judicial finality. To warrant the granting of relief, the petition must allege facts of such a vital nature that, had they been known to the trial court, they conclusively would have prevented entry of the judgment. Hallman v. State, 371 So.2d at 485.
It appears that petitioner's application complies with most of these requisites: it fully discloses the facts relied upon; those facts are sufficient to show prima facie grounds for relief; the evidence relied upon and its source are made known; the alleged facts obviously were not known by the court, petitioner, or his counsel at trial; and neither defendant nor his counsel could have discovered the evidence through the use of due diligence in view of their repeated efforts to obtain assistance from the court and the prosecutor. But the last requisite, that knowledge of these facts at trial would have "conclusively" prevented entry of judgment, is not so readily apparent. Loggie's newly discovered testimony, even though it directly refutes Daniels's testimony implicating Ashley in the alleged crimes, would not be sufficient to conclusively prevent entry of the judgment; at best, such evidence, if believed, would have changed the verdict of the jury. While such newly discovered evidence may be sufficient to warrant granting a motion for new trial, its legal effect on the judgment of conviction is not sufficient to meet the strict requisites for a writ of error coram nobis. Tafero v. State, 406 So.2d 89 (Fla. 3d DCA 1981). See also Smith v. State, 400 So.2d 956 (Fla. 1981); State v. Gomez, 363 So.2d 624 (Fla. 3d DCA 1978); Barber v. State, 257 So.2d 581 (Fla. 4th DCA 1972); Baker v. State, 336 So.2d 364 (Fla. 1976).
Petitioner, however, does not rely in this instance solely upon the legal effect of Loggie's testimony on the jury's finding of guilt. He also contends that the state's complicity in not making its confidential informant, Loggie, available as a witness has deprived petitioner of substantial constitutional rights. Unquestionably, the state's deliberate concealment of an eyewitness whose testimony would be material constitutes a prima facie deprivation of due *1269 process. Ashley v. Wainwright, 639 F.2d 258 (5th Cir.1981). The state is obligated, through the Fourteenth Amendment, to provide the accused compulsory process for the attendance of material witnesses, as required by the Sixth Amendment to the United States Constitution. Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). Where the unavailability of a witness who is material to the defendant's case is shown to have been procured or caused by the state's intentional conduct or its failure to use reasonable care, the state may well be guilty of having deprived an accused of his right to compulsory process if the trial proceeds without such witness. Singleton v. Lefkowitz, 583 F.2d 618 (2d Cir.1978). However, the constitutional right to compulsory process is not absolute, and the state may legitimately require that a defendant requesting such process at state expense establish some colorable need for the person to be summoned, lest the right be abused by those who would make frivolous requests. Hoskins v. Wainwright, 440 F.2d 69, 71 (5th Cir.1971). Accordingly, not all conduct by state officers in causing witnesses to be unavailable amounts to a denial of rights reaching constitutional proportions. Materiality of the omitted testimony in light of all other evidence of guilt is obviously a significant factor.
We construe the allegations in petitioner's application and the attached affidavit to mean that officers of the Jacksonville sheriff's office disregarded the circuit court's directions to find Loggie, persuaded Loggie to remain outside Florida at the critical time of petitioner's trial, and withheld information known to such officers which would have informed petitioner both where and how to reach Loggie. This alleged misconduct would clearly violate petitioner's constitutional rights under the Sixth and Fourteenth Amendments if the requisite materiality of Loggie's testimony were shown and would require the trial judge to set aside the conviction and order a new trial. Presumably, therefore, the last remaining requisite of coram nobis  that the alleged facts would conclusively prevent entry of the judgment of conviction  is also satisfied by petitioner's application.
The remaining question is whether coram nobis is the most appropriate vehicle to determine the requisite materiality of Loggie's testimony in the circumstances of this case. Relief by petition for writ of error coram nobis is discretionary and will not be employed if any other remedy exists. Fiske v. State, 107 So.2d 745, 747 (Fla. 2d DCA 1968). The purpose of the writ is to correct errors of fact, not errors of law. Hallman v. State, 371 So.2d 482, 485 (Fla. 1979). Coram nobis, however, is not limited to correcting errors of fact solely upon the ground of newly discovered evidence, and it has been allowed to attack a judgment of conviction in various circumstances involving improper conduct which deprived the defendant of a fair trial. E.g., Russ v. State, 95 So.2d 594 (Fla. 1967); Chambers v. State, 113 Fla. 786, 152 So. 437 and 158 So. 153 (Fla. 1934); Nickels v. State, 86 Fla. 208, 98 So. 497, 99 So. 121 (Fla. 1924). It has been said that relief by coram nobis may be appropriate where false testimony on a material issue at trial was induced by the prosecuting officer or was known by him to be false when given. Barber v. State, 257 So.2d 581 (Fla. 4th DCA 1972). Cf., State v. Mears, 256 So.2d 217 (Fla. 3d DCA 1972). Where a defendant is no longer "in custody" and thus cannot obtain relief under Rule 3.850, Fla.R.Crim.P., or by way of petition for writ of habeas corpus, it has been held that coram nobis is the appropriate vehicle to attack a conviction on grounds of denial of constitutional rights. Weir v. State, 319 So.2d 80 (Fla. 2d DCA 1975).[3]
On the other hand, a conviction may be attacked in the trial court by motion for post-conviction relief under Rule 3.850 (formerly Criminal Procedure Rule 1) on grounds that the accused was denied the constitutional right to obtain witnesses to testify in his favor and to have compulsory process for obtaining such witnesses. Byers *1270 v. State, 163 So.2d 57 (Fla. 3d DCA 1964). Deprivation of the constitutional right to effective assistance of counsel is also properly asserted by motion under Rule 3.850. Vagner v. Wainwright, 398 So.2d 448 (Fla. 1981). Likewise, an accused's claim that the state unlawfully suppressed evidence favorable to him in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), made after appellate affirmance of defendant's conviction, may be properly considered on motion for post-conviction relief at a full evidentiary hearing in the trial court. Smith v. State, 400 So.2d 956 (Fla. 1981). In Smith, the accused filed a motion for post-conviction relief, together with a motion for leave to file a petition for writ of error coram nobis. While denying leave to petition for writ of error coram nobis, the Court further stated:
In his motion for post-conviction relief, Smith contended that the State's failure to disclose certain allegedly favorable evidence to him before trial amounted to a Brady violation in contravention of his right to due process of law. He further alleged that he did not become aware of this purportedly undisclosed evidence until after judgment and sentence had been entered and that this evidence would have been material to his trial. Since this challenge is based on the ground that the judgment was entered in violation of the due process clause of the constitution, since Smith alleges he did not have knowledge of the basis for this challenge prior to final judgment, and since it is within the peculiar province of the trial court to determine whether there was a Brady violation requiring a new trial, Smith's raising of this point in a motion to vacate judgment was appropriate. 400 So.2d at 962.
We believe that the alleged denial of constitutional rights in this case is sufficiently similar to the alleged Brady violations involved in Smith v. State, supra, for that decision to provide helpful guidance here. Discussing the test of materiality set forth in United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the Court in Smith commented that "upon assertion of a Brady violation after trial, the trial court is required to determine whether a defendant was deprived of his right to due process by the nondisclosure since, unless the omission deprived him of a fair trial, there is no constitutional violation." 400 So.2d at 963. Noting the significant difference between evidence in the possession of the state and evidence simply discovered from a neutral source after trial, the court stated that where the evidence is known to the state, "the defendant should not have to satisfy the severe burden of demonstrating that newly discovered evidence probably would have resulted in acquittal." 400 So.2d at 964. On the other hand, the Court also noted that not every nondisclosure of evidence requires a new trial and that "the constitutional standard of materiality must impose a higher burden on the defendant" than the standard applicable under the harmless error rule. 400 So.2d at 964. The Court then set forth the applicable test for materiality, quoting from United States v. Agurs, supra, as follows:
Finding that the proper standard of materiality must reflect an overriding concern with the justice of the finding of guilt, the Court announced the following as the test for materiality:
`Such a finding [of guilt] is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt. [Footnote omitted.]'
400 So.2d at 964.
*1271 This test of materiality should also be applied to determine whether petitioner's deprivation of rights in this case reached constitutional proportions by reason of the state's alleged misconduct regarding the unavailability of Loggie's testimony at trial. Although it seems doubtful under the circumstances alleged that Loggie's testimony would not be considered material under that test, see Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1959), nevertheless the full record of the trial is not before us on this application and the significance of Loggie's testimony must be evaluated within the context of that entire record. We conclude, therefore, that petitioner's claim for relief is more appropriately determined upon a Rule 3.850 motion and evidentiary hearing in the circuit court.
Petitioner's application for leave to file a petition for writ of error coram nobis or, alternatively, petition for habeas corpus, is denied without prejudice to his right to a full evidentiary hearing on the matters alleged herein when raised by an appropriate motion under Rule 3.850 filed in the trial court.
LARRY G. SMITH and BOOTH, JJ., concur.
NOTES
[1] Though petitioner explicitly emphasizes the Sixth Amendment right to compulsory process, we believe that petitioner's arguments regarding lack of a fair trial and the cases cited are sufficient to require our consideration of the due process argument also. The Fifth Circuit Court of Appeals did also. See Ashley v. Wainwright, 639 F.2d 258, 261 (5th Cir.1981).
[2] We note that a substantial period of time elapsed between the Fifth Circuit Court's order of May 20, 1981, and the filing of the petition in this case. Failure to file a timely application for coram nobis is a sufficient ground to deny such relief in the absence of a good cause. Cayson v. State, 139 So.2d 719 (Fla. 1st DCA 1962). At oral argument, counsel for petitioner stated that he was representing petitioner pro bono publico and that he accepted full responsibility for the delay in filing this application, explaining that his initial responsibility as court-appointed counsel in the federal courts technically expired upon completion of the proceedings in the court of appeals and that although he kept the papers in his office for further processing he had not pursued the matter in state courts as diligently as he should have. The state does not argue, and we do not find, that in these circumstances petitioner should be charged with this delay; therefore, we do not deny the petition on grounds of untimeliness. See Weir v. State, 319 So.2d 80, 81 (Fla. 2d DCA 1975).
[3] Petitioner's application does not allege that he is not in custody.