## ROBERT DAVIS v. STATE.

No. A-1223. Opinion Filed January 18, 1913.

(128 Pac. 1097.)

1. **EVIDENCE—Confessions of Third Persons.** When a defendant is on trial for a violation of the criminal laws of Oklahoma, confessions or admissions alleged to have been made by other persons are not admissible in evidence, either in behalf of the state or the defendant, except for the purpose of impeaching the credibility of witnesses upon proper predicates therefor.

2. **APPEAL—Review.** Where, on appeal from a conviction, it appears that accused is guilty of the offense charged, the judgment will not be reversed except for a fundamental error, or in case it appears that justice has not been done.

*Appeal from District Court, McIntosh County;*
*R. C. Allen, Assigned Judge.*

Robert Davis was convicted of cattle theft, and he appeals. Affirmed.

Robert Acker testified for the state that he resided near the town of Checotah, in McIntosh county, Okla., about fifteen miles from the home of appellant; that appellant lived east of witness; that some time in June, 1910, witness lost a red cow with a white striped face, branded R A on the left hip, and one red yearling with a white face branded R A on the left hip; that witness milked the cow on the morning of the 20th, and turned her out, but she never came up; that witness looked for the cow, but has

never seen her since; that witness had owned this cow for about eighteen months, and she was allowed to run at large upon the range; that before this time the cow came up regularly; that witness was milking the cow and feeding her; that the brand had been recently placed on the cow, and was just about ready to peel off when she was lost; that the same was true of the brand on the heifer; that the cow and heifer ranged right around the home of witness with other cattle belonging to the brothers of witness; that the cattle watered at Car creek; that the country around the home of witness was pretty roughly timbered; that witness went all over the country hunting for his lost cattle, but did not find them.

Lena Herron testified for the state that she was eighteen years of age and lived near Texanna, in McIntosh county, Okla.; that about the 20th day of June, 1910, while witness was picking blackberries with her brother Chester, she saw three men driving twelve or fifteen head of cattle down in a gully like; that one of these men passed close to witness and spoke to her; that witness recognized him as Joe Davis; that he was riding a gray horse; that these cattle were being driven east.

Chester Herron testified that he was twelve years of age; that he was a brother of Lena Herron; that some time in June, 1910, he was picking blackberries with his sister east of Texanna, in McIntosh county, Okla.; that he saw three men driving twelve or fifteen head of cattle; that the men were on horseback; that he did not know the men then, but since that time he has seen one of the men who were driving the cattle; that he was close to one of the men and identified Tom Cobb as being the man; that they were going east; that witness could not describe the cattle either as to color or brands.

Fred Lewis testified for the state that he was twelve years of age; that he lived near Texanna, in McIntosh county, Okla.; that he was acquainted with Bob Davis, Joe Davis, and Tom Cobb; that on the 20th day of June, 1910, witness saw these parties driving some cattle; that they were about four miles east of Texanna; that they were traveling east; that they had twelve or fifteen head of cattle; that witness knew all of these parties then

by name; that the cattle were driven by the home of witness; that the cattle were driven up through a bottom, and witness was about 50 or 60 yards from the cattle; that witness and his sister were hoeing cotton in the field at the time, and witness did not recognize any of the brands on the cattle; that witness. remembers the 20th day of June, because there was a picnic there on the 21st.

Ollie Lewis testified for the state that she was fourteen years of age, and was a sister of Fred Lewis; that some time in June, 1910, she saw twelve or fifteen head of cattle driven by their place going east toward Porum; that witness did not recognize the men who were driving the cattle.

Ben Maxwell testified that he resided near Texanna, in McIntosh county, Okla.; that he knew the appellant, Bob Davis; that Davis resided about three miles northeast of witness; that on the 20th day of June, 1910, witness saw Bob Davis and Tom Cobb driving about fifteen head of cattle by his place; that they were going east; that witness was between 50 and 100 yards from them; that witness never paid any special attention to the cattle, and could not identify them.

Pete Graham testified that he was acquainted with Bob Davis, Joe Davis, and Tom Cobb; that about the 20th day of June, 1910, about half an hour before dark witness saw Joe Davis and Tom Cobb put a bunch of cattle in Bob Davis' pasture. Bob Davis was also with them, but witness was not close enough to tell just what he was doing.

C. C. Ives testified for the state that he was railroad agent for the Midland Railroad Company at Warner in June, 1910; that he knows the appellant Bob Davis; that on the 21st day of June, 1910, Bob Davis shipped out a car load of cattle from Warner to Kansas City.

Oscar Stegall testified for the state that he was deputy sheriff of Muskogee county, and resided at Warner; that on the 21st day of June, 1910, he saw Joe Davis and Bob Davis at the depot at Warner; that they were shipping out a carload of cattle; that witness saw the cattle; that among them was a cow and calf, each freshly branded R A on the hip; that the cow and calf were

both red with white faces; that the calf was a little over a year old.

C. M. Dunbar testified for the state that he resides at Texanna, in McIntosh county, Okla., about two miles from the witness Mr. Acker, who lost the cattle in question; that witness owned a number of cattle; that they ran on the range; that he had lost three head of cattle on the 20th day of June, 1910; that witness' cattle and the cattle of Acker ran on the same range; that witness hunted for his cattle but never found them.

J. C. Frazier testified for the state that in 1910, he resided in McIntosh county, Okla., about a mile from the witness Acker; that witness owned a number of cattle which ran on the same range with Acker's cattle; that on the 20th day of June, 1910, witness lost three head of cattle; that witness hunted for his cattle, but was never able to find them.

R. F. Bell testified for the state that he was acquainted with appellant Bob Davis; that he saw him at the depot at Warner on the 21st day of June, 1910; that appellant was shipping cattle; that witness asked him why he was shipping such cattle; that appellant replied that he had bought them, and could not keep them at home, and thought he would ship them out. The cattle were a mixed bunch of cows, steers, and yearling heifers. They were in very poor condition for shipping. Witness examined the cattle. He saw in the bunch a red cow and a red yearling, each with a white mottled face. They were each branded R A. Witness also saw cattle with other brands testified to as being cattle owned by them which were lost at the same time.

Jim Dunigan testified for the state that he knows appellant, Bob Davis; that witness was with him on the 21st day of June, 1910; that witness saw some cattle which Bob Davis was shipping out; that witness saw the brand R A on some of the cattle.

William Stewart testified for the state that he resides at Warner, and is acquainted with appellant; that witness was in Warner on the 21st day of June, 1910, and saw appellant there, saw him put some cattle into the stock pens; that witness asked appellant why he was shipping such cattle as that; that appel-

lant replied that they were some he had in the brush, and had to get them up, and concluded he would just ship them.

William Ogden testified in behalf of appellant that he resided near Texanna; that he knew Cliff Sellers and Dan Foster; that on the 20th day of June, 1910, he saw these parties driving a bunch of cattle in the direction of Porum.

M. M. Stewart testified in behalf of appellant that he knew appellant; that on the 20th day of June, 1910, he saw appellant at the house of Jim Foster; that Foster resided about a mile from appellant.

John West testified for appellant that on the 18th day of June, 1910, he saw the appellant Bob Davis, Joe Davis, and Tom Cobb driving some cattle; that he supposed the cattle belonged to appellant; that he did not particularly notice the cattle.

Joe Davis testified for appellant that on the 18th day of June, 1910, he assisted appellant to drive some steers and bulls; that he did not turn the cattle into the pasture of appellant on the 20th day of June; that on the 20th day of June appellant was sick with a carbuncle on his neck.

Tom Cobb testified for appellant that on the 18th day of June, 1910, he and Joe Davis and Bob Davis drove some cattle which belonged to appellant, but that witness did not drive any cattle on the 20th day of June for appellant or with appellant.

Charles McClure testified for appellant that on the 18th or 19th of June, Cliff Sellers borrowed a gray mare from witness; that he borrowed the mare on Sunday and returned her on Monday; that she appeared to be ridden very hard.

Appellant testified in his own behalf that twenty head of the cattle which he had shipped from Porum on the 21st day of June, 1910, he had purchased from Dan Foster and Cliff Sellers. Appellant denied he drove any cattle on June 20, 1910, as testified to by the state's witness, but admitted there was a cow branded R A or A R in the bunch he shipped.

*S. M. Rutherford,* for appellant.

*Joseph L. Hull,* Asst. Atty. Gen., for the State.

FURMAN, J. (after stating the facts as above). Counsel for appellant has filed a most able and elaborate brief in which he has discussed a large number of supposed errors alleged to have occurred upon the trial of this case. None of these alleged errors involve any material question in this case, or could have influenced the action of the jury in finding a verdict. At best, they were mere irregularities. This is recognized by counsel for appellant, for he says in his brief:

"In this connection we desire to suggest that in view of the cumulation of error before pointed out, if none, standing alone, should be deemed sufficient by the court, when viewed in the light of all together, and in view of the record in this case, the defendant has been deprived of a fair trial as contemplated by the Constitution and laws of this state."

We think, if human testimony is worth anything, the appellant is guilty of the offense of which he has been convicted. It appears from the record that appellant is an old and confirmed offender. See *Bob Davis v. State,* 7 Okla. Cr. 322, 123 Pac. 560. It is true that the conviction in this case should not be affirmed upon the ground that appellant is a persistent criminal, but, as the evidence of his guilt in this case is conclusive, we should hesitate long before granting a new trial upon any mere irregularity. If there was any theory presented by the evidence upon which the jury could honestly have acquitted him, a different question would be presented. The property rights of the people of Oklahoma should be protected against such characters. This court is not hunting for excuses to set aside the verdicts of juries. We only grant new trials when it appears that some fundamental error has been committed, or that justice has not been done. We believe that the law was substantially complied with in the trial of appellant, and that justice was vindicated in his conviction. It would, therefore, be a waste of time for this court to discuss and consider the various questions of practice presented in the brief of counsel for appellant, as we find no fundamental error there.

There is one matter, however, which has not yet been directly passed upon by this court, which we feel should be settled. Upon the trial of this case appellant attempted to prove that one

Cliff Sellers and one Dan Foster had stated that they had gotten Bob Davis, Joe Davis, and Tom Cobb arrested for stealing a bunch of cattle; that the officers had arrested the wrong men; that Sellers and Dan Foster had sold these cattle to appellant, and could prove how they got them; and that appellant was not guilty of stealing the cattle. Appellant contends that this was a confession of Sellers and Foster that they, and not appellant, had stolen the cattle, and was therefore admissible as testimony in behalf of appellant. In support of this proposition appellant's counsel cites the case of *Gilder v. State,* 61 Tex. Cr. R. 16, 133 S. W. 883, and *Dubose v. State,* 10 Tex. App. 230. In *Dubose v. State,* 10 Tex. App. 230, the defendant was charged with and convicted of murder. In that case Judge Hurt held that a defendant has the right to attack with every character and description of legal evidence any fact upon which his guilt depends. Not one word is said about the admission of hearsay evidence. The case of *Gilder v. State,* 61 Tex. C. R. 16, 133 S. W. 883, is also a Texas case. The opinion is by Presiding Judge Davidson. Gilder was tried and convicted of burglary. The principal witness against him was a man named Smith. The defendant applied for a continuance upon the ground that he could prove by absent witnesses that the state's witness Smith had confessed to being the real thief. The court held that this evidence was competent, and the continuance should have been granted. With this we fully agree, because the testimony was admissible for the purpose of impeaching the testimony of the state's witness Smith. But, if Smith had not been a witness against Gilder, the previous confession of Smith would have been the wildest kind of hearsay. If Sellers and Foster had testified against appellant, they could have been questioned as to the alleged confession, and, if they had denied it, it would have been admissible in evidence for the purpose of impeaching their testimony. This is all that the authorities cited by counsel for appellant decide, and with this we agree. So it is seen upon examination that the authorities relied upon do not support the contention of counsel. If evidence of this kind were admissible as original testimony for a defendant, it would be impossible to convict any thief, because he could

always find witnesses who would testify that they had heard some one who was absent confess to being guilty of the crime. To hold that such evidence was competent would put a premium on fraud, make perjury safe, and place the state at the mercy of criminals. This would make a mockery of the law, and will not be permitted in the courts of Oklahoma.

We find no material error in the record. The judgment of the lower court is in all things affirmed.

ARMSTRONG, P. J., and DOYLE, J., concur.