336 So.2d 364 (1976)
Harold BAKER, Petitioner,
v.
STATE of Florida, Respondent.
No. 48243.
Supreme Court of Florida.
July 28, 1976.
*365 Richard W. Ervin, III, Public Defender, for petitioner.
Robert L. Shevin, Atty. Gen., and Donald K. Rudser, Asst. Atty. Gen., for respondent.
*366 HATCHETT, Justice.
Petitioner Baker and another were convicted of robbery. After the trial, the wife and mother-in-law of one J.E. Johnson came forward with the report that Johnson had told them that Baker was innocent. The mother-in-law, Mrs. Brown, said Johnson admitted committing the crime himself, to her and in her daughter's presence. The wife did not go so far as to testify that Johnson confessed, but recounted his assertion of Baker's innocence. When motion for new trial came on for hearing, Johnson was nowhere to be found, but transcriptions of statements, which Mrs. Brown and Mrs. Johnson had given under oath, were offered in support of the motion. The trial judge granted the motion for new trial as to Baker.[1] On appeal to the District Court of Appeal, First District, Baker's conviction was affirmed, and the order granting a new trial was reversed. 319 So.2d 609.
The District Court reasoned that the testimony of Johnson's wife and mother-in-law would not be admissible at a new trial, because admissions against penal interest have not been recognized as an exception to the hearsay rule in the First District, Francis v. State, 308 So.2d 174 (Fla.App.1st 1975); Pitts v. State, 307 So.2d 473 (Fla. App.1st 1975) cert. dismissed, 423 U.S. 918, 96 S.Ct. 302, 46 L.Ed.2d 273 (1975), and concluded, "If the proferred [sic] evidence cannot be admitted, it cannot affect the result of the trial." 319 So.2d at 610.
Petitioner alleges a conflict between the District Court's decision in this case and the decision in State v. Brown, 177 So.2d 532 (Fla.App.2d 1965). As in the present case, the prosecution in State v. Brown, supra, appealed an order granting a new trial, after a robbery conviction. There as here the new trial was ordered on the basis of newly discovered evidence. The evidence adduced on motion for new trial in Brown consisted of the results of three polygraph tests, two procured by the defense and one procured by the prosecution. The court noted that "[s]uch tests are generally not admissible in evidence and should be excluded upon the objection of any party," 177 So.2d at 533, but affirmed the order granting a new trial because, in the absence of an objection at the hearing on motion for new trial, "the parties stipulated, in effect, that the court could consider on a motion for new trial the so-called `lie detector or polygraph test.'" Id. At the hearing on the motion in the present case, the prosecutor never objected to the admission of the newly discovered witnesses' statements, or to the trial court's considering the statements in deciding the motion for new trial. See generally Annot., 79 ALR 2d 890, 897 (1961) ("the general rule, supported by the overwhelming weight of authority, [is] that where inadmissible hearsay evidence is admitted without objection, it may properly be considered....") Nevertheless the District Court reversed the grant of a new trial in this case. Even on the District Court's assumption that the newly discovered evidence would prove inadmissible at trial, therefore, the decision below conflicts with the decision in Brown where evidence was likewise deemed inadmissible over objection at trial, but was held properly considered *367 on motion for new trial, absent objection. We have jurisdiction. Article V, Section 3(b)(3), Florida Constitution.
The District Court's conclusion that the trial court erred in considering the statements of Mrs. Johnson and Mrs. Brown, rests on the premise that the newly found witnesses' testimony would not be admitted, if objected to at a new trial. Unquestionably such testimony is hearsay, and Mrs. Johnson's testimony would clearly be inadmissible over objection at trial,[2] but there is a division of authority as to whether testimony like Mrs. Brown's falls within the declaration against interest exception to the rule excluding hearsay. The District Court of Appeal, First District, has decided that "a statement against interest, otherwise hearsay, would be admissible only if shown to be against the pecuniary or proprietary interest of the declarant." Francis v. State, supra at 176. Outside the First District, Florida authority is scant, and the question whether declarations against penal interest constitute an exception to the prohibition against hearsay is apparently one of first impression in this Court.
At early common law, declarations against interest were admitted in evidence, without regard to the nature of the interest compromised.[3] In the 1844 Sussex Peerage case,[4] however, the House of Lords narrowed the exception to declarations against pecuniary or proprietary interest, and ruled inadmissible a written confession of criminal activity. This "barbarous doctrine"[5] became firmly embedded in English law and gained wide acceptance in the United States as well, even though legal commentators have criticized the Sussex Peerage Rule almost unanimously,[6] ever since its inception. At least until the decision in Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), however, a majority of American jurisdictions adhered to this limitation on the declaration against interest exception.
But even before Chambers, several American jurisdictions included statements creating criminal liability within the declaration against interest hearsay exception. Some States did so by statute,[7] while others which gave lip service to the Sussex Peerage Rule nonetheless admitted declarations against penal interest in order to prevent obvious injustice in individual cases.[8] Still other jurisdictions proceeded on the theory that a confession to a crime is usually also an admission of tort liability and thus admissible as a declaration against pecuniary interest.[9] Finally, some courts simply extended *368 the hearsay exception by judicial decision to cover declarations against penal interest.[10] See also Rule 804(b)(3), Federal Rules of Evidence. In People v. Spriggs,[11] for example, the defendant was charged with possession of heroin. At trial he sought to elicit from the arresting officer testimony to the effect that a companion had declared at the time of Spriggs' arrest that the drug in question belonged to her, not to him. The trial judge sustained a hearsay objection, and the defendant was convicted. The California Supreme Court reversed, per Traynor, J., holding declarations against penal interest admissible on the ground that they are as likely to be reliable as the other types of hearsay which California exempts from exclusion.[12]
The accused in People v. Brown[13] sought to show self-defense, claiming that the murder victim had a pistol drawn at the time he was shot. Only one of several witnesses at trial supported the defense version of events, and police officers testified they found no gun. A man named Seals had previously admitted, both to police and to Brown's counsel, that he had picked up a gun lying near the corpse, which he said he later used to commit a robbery. At Brown's trial, Seals declined to repeat these statements on constitutional grounds. The court sustained objections to defense efforts to prove Seals' out-of-court declarations by other witnesses, and Brown was convicted of murder. The Court of Appeals reversed, establishing the declaration against penal interest exception in New York.
Federal constitutional implications of excluding declarations against penal interest as hearsay were explored in Chambers v. Mississippi, supra. In that case, a man was killed by gunfire coming from a crowd, and Chambers was prosecuted for murder. One McDonald had confessed to firing the fatal shots, once in writing and other times orally to various persons. The defense called McDonald as a witness, and moved that McDonald be declared adverse. This motion was denied, so that defense counsel was unable to cross-examine McDonald, when he repudiated the written confession. Testimony of the persons who had heard the oral confessions was excluded because Mississippi did not recognize the declaration against penal interest exception. On petition for writ of certiorari, the United States Supreme Court reversed, saying that "the hearsay rule may not be applied mechanistically to defeat the ends of justice." 410 U.S. at 302, 93 S.Ct. at 1049. In dissent, Mr. Justice Rehnquist lamented "the Court's further constitutionalization of the intricacies of the common law of evidence," 410 U.S. at 308, 93 S.Ct. at 1052, but the majority disavowed any intention to "establish ... new principles of constitutional law." 410 U.S. at 302, 93 S.Ct. at 1049.
Its opponents argue that the declaration against penal interest exception opens the door to perjurious narrations of apocryphal admissions, and also allows in evidence truthful and convincing testimony from gullible persons who have heard false confessions.[14] The risk of perjury inheres in testimony of all kinds, however, and the objection that an out of court declaration might be calculated to mislead applies to any exception to the hearsay rule.
Like many other jurisdictions, see e.g., United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), Florida does recognize the declaration against penal interest exception when the question is whether there is probable cause for a search. State v. Patterson, 309 So.2d 555 *369 (Fla.App.2d 1975). If a declaration against penal interest affords a sufficiently trustworthy basis for the authorities to enter an unwilling citizen's home and search, such a declaration must likewise be sufficiently trustworthy for a jury at least to consider, when offered by an accused attempting to establish his innocence of criminal charges. The rationale for the declaration against interest exception was early stated in Gibblehouse v. Stong, 3 Rawle 437 (Pa. 1832):
The principle is founded on a knowledge of human nature. Self-interest induces men to be cautious in saying anything against themselves, but free to speak in their own favor. We can safely trust a man when he speaks against his own interest. At 438.
It is inconceivable that a man would be more cautious in conceding a five dollar debt than in confessing a murder.
More is involved here than doctrinal incongruities. Law courts depend for such effectiveness as they have on the cooperation of the wider community, and trials must be conducted in a way that will earn the cooperation and support of people of good will in every walk of life. Excluding from one man's trial another man's confession to the offense charged is no means to that end. Dissenting in Donnelly v. United States, 228 U.S. 243, 33 S.Ct. 449, 57 L.Ed. 820 (1913), Mr. Justice Holmes wrote:
The confession of [another] ... that he committed the murder for which [Donnelly] was tried [and convicted] coupled with circumstances pointing to its truth, would have a very strong tendency to make anyone outside of a court of justice believe that Donnelly did not commit the crime.
228 U.S. at 277, 33 S.Ct. at 461.
When people come from "outside of a court of justice" to sit as jurors and decide a fellow citizen's fate, depriving them of information so clearly appropriate to their task, solely on the basis of an historical quiddity  an English case over a century old  is to insult their good intentions and to invite their disaffection. Wigmore is right in railing against a doctrine
which would refuse to let an innocent accused vindicate himself even by producing to the tribunal a perfectly authenticated written confession, made on the very gallows, by the true culprit now beyond the reach of justice. Those who watched (in 1899) with self-righteous indignation the course of proceedings in Captain Dreyfus' trial should remember that, if that trial had occurred in our own courts, the spectacle would have been no less shameful if we, following our own supposed precedents, had refused to admit what the French court never for a moment hesitated to admit  the authenticated confession of the absconded Major Esterhazy, avowing himself the guilty author of the treason there charged, and now known beyond a doubt to have been the real traitor. 5 Wigmore, Evidence § 1477 (Chadbourn rev. 1974).
In short, we reject for Florida any "materialistic limitation on the declaration-against-interest hearsay exception." Chambers v. Mississippi, supra, 410 U.S. at 299, 93 S.Ct. at 1048.
There remains the question of the propriety of a new trial.[15] Generally, "courts look with disfavor and distrust on applications for a new trial ... [lest they] encourage counsel to neglect to gather all available evidence for a first trial." 23 Fla.Jur. New Trial § 64 (1959). See Smith v. State, 117 Fla. 458, 158 So. 91 (1934); Herndon v. State, 73 Fla. 451, 74 So. 511 (1917); Mitchell v. State, 43 Fla. 584, 31 So. 242 (1901). The State makes no argument here, however, that defense counsel's belated discovery of evidence was attributable to a lack of diligence. In this respect, the present case resembles Keaton v. State, 273 So.2d 385 *370 (Fla. 1973) and Douth v. State, 85 So.2d 550 (Fla. 1956), and should be distinguished from cases like Harvey v. State, 87 So.2d 582 (Fla. 1956), and Luster v. State, 262 So.2d 910 (Fla.App.3d 1972).
In Florida, as elsewhere, "the rule is that the `confession' of a third person is grounds for a motion for new trial, but does not compel the trial judge to grant a new trial." Fast v. State, 221 So.2d 203, 205 (Fla.App.3d 1969); Walden v. State, 284 So.2d 440 (Fla.App.3d 1973); DeBinder v. United States, 112 U.S.App.D.C. 343, 303 F.2d 203 (1962). Because we have concluded that admissions against interest need not be excluded as hearsay, testimony of persons who have heard a confession should be considered on motion for new trial, when the person confessing is unavailable to testify himself.
In deciding a motion for new trial on the ground of newly discovered evidence, the trial judge must weigh both the evidence adduced at the first trial, and the evidence offered on the motion, in order to determine whether the newly discovered evidence "if introduced at the trial would probably have changed the verdict." Rule 3.600(a)(3), RCrP. Accordingly, the "trial judge has a wide discretion in the matter of granting or denying [motions for new trial] which we will not overthrow unless some abuse is shown." State v. Sears, 148 Fla. 89, 3 So.2d 721, 722 (1941). State v. Strickland, 172 So.2d 260 (Fla.App.2d 1965). Only very rarely should the trial court's determination be disturbed, see Hicks v. State, 127 Fla. 669, 173 So. 815 (1937); Solis v. State, 262 So.2d 9 (Fla.App.2d 1972) cert. den., 265 So.2d 372 (Fla. 1972); Douth v. State, supra, and especially is this so if the trial court grants a new trial in a criminal case on the basis of newly discovered evidence, because "[c]ourts ... are sometimes indulgent in their requirements as to a showing of newly discovered evidence, if they are impressed with the conviction that there has been a miscarriage of justice. ." Edwards v. People, 73 Colo. 377, 215 P. 855, 862 (1923).
The learned District Judge applied these principles to the present case, when he wrote:
The trial court's order granting a new trial is entitled to a strong presumption of correctness. .. . That rule is especially applicable in a criminal case such as this, in which the trial court obviously had reservations about the strength of the State's identification testimony. 319 So.2d at 610.
We are unable to conclude that the trial judge abused his discretion in granting a new trial in the present case.
The decision of the District Court of Appeal, First District, is quashed and the cause is remanded, with directions that the order granting a new trial be reinstated.
OVERTON, C.J., and ADKINS, BOYD and SUNDBERG, JJ., concur.
NOTES
[1] The trial court acted pursuant to Rules 3.580-3.600, RCrP. Rule 3.600, RCrP, provides, in part, as follows:

(a) The court shall grant a new trial if any of the following grounds is established:
* * * * * *
(3) That new and material evidence, that if introduced at the trial would probably have changed the verdict or finding of the court, and that the defendant could not with reasonable diligence have discovered and produced upon the trial, has been discovered.
(b) The court shall grant a new trial if any of the following grounds is established, providing substantial rights of the defendant were prejudiced thereby:
* * * * * *
(6) That the court erred in the decision of any matter of law arising during the course of the trial;
* * * * * *
(8) That, for any other cause not due to the defendant's own fault, he did not receive a fair and impartial trial.
(c) When a motion for new trial calls for a decision on any question of fact, the court may consider evidence on such motion by affidavit or otherwise.
[2] In Mrs. Johnson's transcribed statement, she does not say that her husband confessed the crime, only that he said Baker did not commit the crime. This is not a declaration against interest. See Dempsey v. Meighen, 251 Minn. 562, 571, 90 N.W.2d 178, 184 (1958); Doe v. Langfield, 16 Mees. & W. 514 (1847); Doe v. Burton, 9 Car. & P 254 (1840). Johnson's statements to his wife were not privileged, because they were made in Mrs. Brown's presence. In order for the marital privilege to apply, "the communication in question must have been made in confidence." Proffitt v. State, 315 So.2d 461, 464 (Fla. 1975) cert. granted, 423 U.S. 1082, 96 S.Ct. 1090, 47 L.Ed.2d 94 (1976).
[3] See 5 Wigmore, Evidence, § 1476 nn. 5 & 8 (Chadbourn rev. 1974).
[4] 11 Cl. & F. 85, 8 Eng.Rep. 1034 (1844). The date of this decision is significant because Florida has adopted the common law of England only "down to the 4th day of July, 1776." Section 2.01, Florida Statutes (1975). Cf. Donnelly v. United States, 228 U.S. 243, 278, 33 S.Ct. 449, 57 L.Ed. 820 (1913) (Holmes, J., dissenting: "the English cases since the separation of the two countries do not bind us").
[5] 5 Wigmore, supra note 3, § 1477 at 360.
[6] E.g., 5 Wigmore, supra note 3, § 1477; Morgan, Declarations Against Interest, 5 Vand.L. Rev. 451, 473-75 (1952); Prince, The Hearsay Rule and the Proposed Rules of Evidence, 25 Record of N.Y.C.B.A. 531, 538 (1970).
[7] See Cal.Evid.Code § 1230 (1966); Kan.Stat. § 60-460(j) (1964); N.J.Evid.Rule 63(10) (1967); Wis.R.Evid. §§ 908.03(3), 908.045(4) (1974).
[8] See, e.g., People v. Lettrich, 413 Ill. 172, 108 N.E.2d 488 (1952); Brennan v. State, 151 Md. 265, 134 A. 148 (1926); Thomas v. State, 186 Md. 446, 47 A.2d 43 (1966).
[9] E.g., Weber v. Chicago, R.I. & P. Ry. Co., 175 Iowa 358, 151 N.W. 852 (1915); Aetna Life Ins. Co. v. Strauch, 179 Okla. 617, 67 P.2d 452 (1937). This rationale has been called "a plausible ground of escape from the results of a settled foolish rule." Morgan, supra note 6, at 475.
[10] E.g., People v. Spriggs, 60 Cal.2d 868, 36 Cal. Rptr. 841, 389 P.2d 377 (1964); State v. Leong, 51 Haw. 581, 465 P.2d 560 (1970); People v. Brown, 26 N.Y.2d 88, 308 N.Y.S.2d 825, 257 N.E.2d 16 (1970).
[11] 60 Cal.2d 868, 36 Cal. Rptr. 841, 389 P.2d 377 (1964).
[12] Id. at 874-75, 36 Cal. Rptr. at 845, 389 P.2d at 381.
[13] 26 N.Y.2d 88, 308 N.Y.S.2d 825, 257 N.E.2d 16 (1970). See generally 34 Albany L.Rev. 720 (1970).
[14] See Donnelly v. United States, 228 U.S. 243, 273, 33 S.Ct. 449, 57 L.Ed. 820 (1913); Davis v. State, 8 Okla. Cr. 515, 128 P. 1097 (1913).
[15] Although it has been said that the "rules regulating the granting of new trials on the ground of newly discovered evidence... are not inflexible, and must sometimes bend in order to meet the ends of justice." Adams v. State, 55 Fla. 1, 46 So. 152, 154 (1908), there is no occasion for bending any of the rules in the present case.