528 So.2d 1171 (1988)
Leo Alexander JONES, Appellant,
v.
STATE of Florida, Appellee.
No. 70836.
Supreme Court of Florida.
June 23, 1988.
Rehearing Denied August 26, 1988.
*1172 Robert J. Link, Jacksonville, for appellant.
Robert A. Butterworth, Atty. Gen. and Mark C. Menser, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
This is an appeal from an order denying a motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850. Because the appellant was previously convicted of first-degree murder and sentenced to death, we have jurisdiction under article V, section 3(b)(1) of the Florida Constitution.
The facts surrounding the crime are set forth in our opinion on the direct appeal of appellant's conviction as follows:
The evidence at trial showed that on May 23, 1981, shortly after 1:00 A.M., Officer Thomas J. Szafranski was shot in his squad car at the intersection of 6th Street and Davis Street, Jacksonville, Florida. Officer Wilmouth was first on the scene. While Wilmouth waited for medical assistance to arrive a group of people came out of a nearby bar and approached him. One unidentified member of the group indicated that the shots had come from the two-story apartment building fronting the 6th and Davis Street intersection. Thereafter Wilmouth proceeded to investigate this building.
Officer Mundy had been informed of the incident by radio and quickly joined Wilmouth in the investigation. According to Mundy, the reputation of the apartment building in question was well travelled in law enforcement circles. Mundy entered the building fully aware *1173 that the vacant lower left apartment was a known "stash house" harboring drug users, vagabonds and other street criminals.
The two officers' search of the building's lower level produced nothing. However, Wilmouth informed Mundy that he had heard "shuffling" in the upper left apartment. Thereafter Mundy approached this apartment, knocked on the door, and proceeded to identify himself as a police officer. His repeated knocking, however, went unanswered. When Mundy continued to hear voices coming from within he entered the apartment; there he confronted appellant and appellant's cousin, Bobby Hammond, charging them both with attempted first-degree murder. During a cursory search of the apartment, assisting officers located several high-powered rifles, resting in plain view, but did not, at that time, disturb them.
Both appellant and Hammond were then transported to the Police Memorial Building. There, after being given repeated Miranda warnings by Officer Eason, appellant signed a statement incriminating himself and exonerating his cousin, Hammond.
Jones v. State, 440 So.2d 570, 572 (Fla. 1983).
Appellant raised several grounds in his motion for postconviction relief. The court summarily denied all of the claims except for those which asserted the ineffective assistance of trial counsel. Following an evidentiary hearing, the court denied the balance of appellant's motion.
Appellant's trial lawyer was H. Randolph Fallin, an experienced criminal lawyer who had handled several death penalty cases. Appellant made wide-ranging charges of ineffectiveness against Fallin, but we will discuss only those which appear to us to be the most significant.
There were several allegations that Fallin failed to present available evidence which would have proven appellant's innocence.
The first issue deals with two alleged eyewitnesses to the shooting who were not called to testify at trial. One facet of appellant's defense was that rather than coming from his apartment, the fatal shot was actually fired from a vacant lot next door. To discount state evidence that the shots had come from the apartment building, Fallin put on witnesses who testified that the sound of the shot had come from the vacant lot between appellant's apartment and a tavern.
Appellant now claims that Fallin should have elicited the testimony of two alleged eyewitnesses to the shooting, Anderson and Spivey. They testified at the postconviction hearing that shortly after arriving at the scene during a round of drinking, they had seen the flash of a shot coming from the vacant lot. Anderson further testified that after the shot he had seen a man who was not appellant run from the side of the tavern and hide in a parked car that was later driven away by a woman. Anderson and Spivey said police took their names but did not interview them. Their names and addresses were among many others on the state's witness list, but neither side called them at the trial.
Fallin testified that he went to the neighborhood where the crime occurred several times and interviewed dozens of persons. Rather than hiring a professional investigator, he enlisted the aid of appellant's family members who were very helpful in locating potential witnesses and arranging for him to meet them. Fallin testified that he made several efforts to locate Anderson and Spivey but was unable to do so. However, he noted that even if he had interviewed Anderson and Spivey prior to the trial and they had told him what they had testified to at the postconviction hearing, he would not have considered their testimony significant. He believed their testimony would have been cumulative to more reliable witnesses. He further pointed out that Anderson's credibility would have been destroyed on cross-examination because if a man had run from the vacant lot and hidden in the car, he would have had to run past several policemen who were already on the scene.
*1174 Appellant also contends that Fallin should have located a Marion Manning, whose boyfriend, Glenn Schofield, was appellant's roommate and owned the guns used in the shooting. Appellant says Ms. Manning would have testified that Schofield was present at the time of the shooting and that shortly after the shots were fired he jumped into her car, which was parked nearby, and told her to drive away. Fallin testified that he had heard that Schofield was at the scene and had sought to talk to him at a jail in which Schofield was being held following an arrest for an unrelated crime. Schofield refused to discuss the case with Fallin and would not give him the name of the woman who was supposed to have been with him. Another witness at the postconviction hearing testified that she had given Marion Manning's name to Fallin, but Fallin emphatically denied this.
We find that there is sufficient evidence in the record to support the trial judge's conclusion that "counsel conducted a reasonable investigation using members of the Defendant's family to assist him in questioning many people in a neighborhood where there is a distrust of outsiders." The testimony of Anderson and Spivey would have been in large measure cumulative and at least somewhat unreliable because of their intoxicated condition. Accepting the judge's finding that he was never told her last name, Fallin cannot be faulted for not locating Marion Manning. Moreover, it is questionable whether she could have been helpful to the defense because she testified at the postconviction hearing that as he got into the car, Schofield told her that appellant had shot the policeman.
Next, appellant contends that Fallin was ineffective for failing to introduce testimony of Bobby Hammond that the police physically abused appellant and Hammond after their arrest. This testimony would have supported appellant's contention that he was coerced into a confession. Both the prosecution and the defense knew that Hammond was an unreliable witness because he had given several different versions of the events. After failing to have him declared a court witness, the state put Hammond on the stand, and his testimony implicated appellant in the shooting. Fallin attempted to cross-examine Hammond concerning what had occurred following the arrest, but he was precluded from doing so because the questions were beyond the scope of direct examination. Though he originally told the jury he would call Hammond himself, Fallin said that he later decided that he could not run the risk of putting Hammond on the stand because Hammond was totally unpredictable and was like a "time bomb." Appellant now suggests that Fallin would have been better off to permit Hammond to be called as a court witness so that he would have had more latitude in cross-examination. Fallin said that he chose to oppose the state's motion so that the state would have to vouch for Hammond's credibility and could not interrogate him with leading questions. The state attorney corroborated Fallin's position by testifying that Fallin's efforts in keeping Hammond from being declared a state witness were a victory for the defense. The evidence supports the trial judge's finding that the decision "not to call the unpredictable Bobby Hammond as a witness" was a reasonable tactical decision.
Appellant further argues that Fallin was ineffective because prior to the trial he permitted appellant to plead guilty to battery of a police officer, and the trial judge later considered this crime as the aggravating circumstance that appellant had been previously convicted of a felony involving the use of violence. This plea occurred because appellant was scheduled to go to trial two weeks before his murder trial on charges of battery against a law enforcement officer, possession of marijuana and two counts of possession of a firearm by a convicted felon. The state offered a plea bargain under which appellant would plead nolo contendere to battery on a law enforcement officer in exchange for the dismissal of the other three charges. Fallin, who was also representing appellant on these charges, testified that he believed that appellant would be convicted on all four charges. Since he intended for appellant *1175 to testify at the murder trial, he reasoned that it would be better for appellant to accept the plea bargain and thereby avoid having to admit on cross-examination that he had been convicted of four felonies. The record is sufficient to support the trial judge's conclusion that "counsel's decision that four felony convictions would be more damaging to Defendant's credibility at his murder trial than one felony conviction was a reasonable tactical decision."
An additional contention is made that Fallin rendered ineffective assistance by failing to introduce testimony of Dr. Ernest C. Miller, a psychiatrist, during the penalty phase of the trial. Dr. Miller had originally examined appellant to determine his competence to stand trial and his sanity at the time of the offense. Dr. Miller had found that appellant was competent to stand trial and that he was not legally insane at the time of the offense. Dr. Miller was not called as a witness. At the hearing on postconviction relief, Dr. Miller testified that he had concluded that appellant suffered a personality disorder in the manner of a paranoid personality with disassociation features, which could be a contributing if not a controlling factor with respect to causing a person to commit a crime such as that in this case. He acknowledged, however, that Fallin was present during appellant's entire examination and that he did not tell Fallin that appellant had any significant impairment in his thought processes or emotional functioning. His written report reflected no abuse of drugs or alcohol, no prior psychiatric treatment and a relatively good family environment. He admitted that despite its reference to a personality disorder, the overall appearance of the report was one of "benignity."
When asked why he did not put Dr. Miller on the stand during the penalty phase, Fallin said that to do so would have been contrary to his theory of the case. He explained that he had spent the entire trial saying that appellant did not commit the murder and that appellant had testified in detail that he had not done so. Fallin believed that to later go before the jury in the penalty phase and say that appellant committed the crime because he was paranoid would have destroyed any credibility that the defense might have had with the jury. He further concluded that Dr. Miller's testimony would not harmonize with the other mitigating testimony to the effect that appellant was not the sort of person who would have committed this kind of crime and that he was a respectful person, helpful with elderly people and supportive of his family. We agree with the trial judge's determination that not to call Dr. Miller "was a reasonable tactical decision."
Appellant also raises two points which are ancillary to his claims of ineffectiveness. At the postconviction hearing, the defense presented the testimony of Paul Allen Marr, who said that he became acquainted with Schofield in 1985 when both were inmates at Union Correctional Institution. According to Marr, Schofield admitted that he, rather than appellant, had killed the officer in Jacksonville. Upon the state's motion, the court struck Marr's testimony as immaterial and irrelevant to the claims of ineffectiveness of counsel. This ruling was clearly correct. Purported admissions by a third party concerning the crime made three years after the trial have no bearing on the question of whether Fallin provided appellant effective counsel.
Finally, appellant asserts a violation of the principle of Haliburton v. State, 514 So.2d 1088 (Fla. 1987), because the police failed to comply with Fallin's telephonic request not to question him and further frustrated Fallin's efforts to talk to him until after he had confessed. In Haliburton this Court recently held that the egregious conduct of the police in refusing to make the defendant available to his lawyer despite a court order to do so constituted a due process violation which mandated the suppression of the defendant's confession. However, there is nothing in the Haliburton opinion that suggests that it should be retroactively applied. In fact, it would be inappropriate to do so since Haliburton placed new limitations on police action which reasonably could not have been foreseen. The principle of Haliburton does *1176 not affect the voluntariness of appellant's confession, which was upheld in our previous opinion. Therefore, we do not reach the question of whether the police action in this case would have violated Haliburton had it occurred subsequent to the issuance of that opinion.
We reject the appellant's remaining contentions and affirm the order denying the motion for postconviction relief.
It is so ordered.
McDONALD, C.J., and OVERTON, EHRLICH, SHAW, GRIMES and KOGAN, JJ., concur.
BARKETT, J., concurs in result only.