678 So.2d 309 (1996)
Leo Alexander JONES, Appellant,
v.
STATE of Florida, Appellee.
No. 81346.
Supreme Court of Florida.
April 11, 1996.
Rehearing Denied August 20, 1996.
Martin J. McClain, Chief Assistant CCR and Gail E. Anderson, Assistant CCR, Office of the Capital Collateral Representative, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General; Richard B. Martell, Chief, Capital Appeals and Curtis M. French, Assistant Attorney General, Tallahassee, for Appellee.
*310 PER CURIAM.
Leo Alexander Jones, a prisoner under sentence of death, appeals the denial of his second motion for postconviction relief which was denied by the trial court after this Court remanded the matter for an evidentiary hearing in Jones v. State, 591 So.2d 911 (Fla.1991). We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution.
Jones was convicted of the 1981 murder of Officer Thomas J. Szafranski of the Jacksonville Sheriff's office. The jury recommended death and the trial judge followed that recommendation. Jones' conviction and death sentence were affirmed by this Court on direct appeal in Jones v. State, 440 So.2d 570 (Fla.1983). Thereafter, Jones filed a petition for writ of habeas corpus which this Court denied. Jones v. Wainwright, 473 So.2d 1244 (Fla.1985). Jones then filed his first motion for postconviction relief. The trial court denied the motion, and this Court affirmed. Jones v. State, 528 So.2d 1171 (Fla. 1988). After Jones' first death warrant was signed, he filed a second petition for writ of habeas corpus which this Court denied. Jones v. Dugger, 533 So.2d 290 (Fla.1988). Jones next filed a federal habeas petition. The federal trial court granted Jones a stay of execution, but subsequently denied his federal habeas petition and the Eleventh Circuit Court of Appeals affirmed. Jones v. Dugger, 928 F.2d 1020 (11th Cir.), cert. denied, 502 U.S. 875, 112 S.Ct. 216, 116 L.Ed.2d 174 (1991).
Most recently, after his second death warrant was signed, Jones filed a second motion for postconviction relief wherein he alleged (1) that his trial counsel was ineffective for failing to locate and present certain witnesses, and (2) that he was entitled to a new trial based on newly discovered evidence. The trial court denied Jones' motion, concluding that the ineffectiveness claim was procedurally barred and that the evidence which could be deemed newly discovered would not have compelled a verdict for Jones in the event it had been introduced at trial. We agreed that Jones' ineffective assistance of counsel claim was barred. Jones, 591 So.2d at 913. As to Jones' newly discovered evidence claim, we held that "henceforth, in order to provide relief, the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial." Id. at 915. Having adopted a new standard for evaluating claims of newly discovered evidence, and being unable to determine from the face of the pleadings whether some of the evidence proffered by Jones was newly discovered, we stayed Jones' execution and remanded for an evidentiary hearing. Id. at 916. After an evidentiary hearing, Jones' second motion for postconviction relief was again denied. This appeal followed.
The essential facts surrounding Officer Szafranski's murder were set forth in this Court's decision relating to Jones' direct appeal:
The evidence at trial showed that on May 23, 1981, shortly after 1:00 A.M., Officer Thomas J. Szafranski was shot in his squad car at the intersection of 6th Street and Davis Street, Jacksonville, Florida. Officer Wilmouth was first on the scene. While Wilmouth waited for medical assistance to arrive a group of people came out of a nearby bar and approached him. One unidentified member of the group indicated that the shots had come from the two-story apartment building fronting the 6th and Davis Street intersection. Thereafter Wilmouth proceeded to investigate this building.
Officer Mundy had been informed of the incident by radio and quickly joined Wilmouth in the investigation. According to Mundy, the reputation of the apartment building in question was well travelled in law enforcement circles. Mundy entered the building fully aware that the vacant lower left apartment was a known "stash house" harboring drug users, vagabonds and other street criminals.
The two officers' search of the building's lower level produced nothing. However, Wilmouth informed Mundy that he had heard "shuffling" in the upper left apartment. Thereafter Mundy approached this apartment, knocked on the door, and proceeded to identify himself as a police officer. His repeated knocking, however, went unanswered. When Mundy continued *311 to hear voices coming from within he entered the apartment; there he confronted [Jones] and [Jones'] cousin, Bobby Hammond[s], charging them both with attempted first-degree murder. During a cursory search of the apartment, assisting officers located several high-powered rifles, resting in plain view, but did not, at that time, disturb them.
Both [Jones] and Hammond[s] were then transported to the Police Memorial Building. There, after being given repeated Miranda warnings by Officer Eason, [Jones] signed a statement incriminating himself and exonerating his cousin, Hammond[s].
Jones, 440 So.2d at 572. In our opinion remanding this case for an evidentiary hearing, we further elaborated on the facts of this case:
Prior to trial, Jones moved to suppress his confession. He and Hammond[s] testified that the police beat them both at the scene and at the police station. The police acknowledged striking them at the scene but testified that it was necessary to do so because they were resisting arrest. The police denied hitting them at any other time. Prior to obtaining Jones' short two-sentence confession, they took him to the hospital. The attending doctor testified that Jones had only superficial injuries. The trial judge refused to suppress the confession, and this ruling was ultimately approved on appeal.
At trial, the State relied heavily upon the confession. However, there was also testimony that about a week prior to the murder Jones had told a police officer that he was tired of being hassled by the police and that he intended to kill a pig. Further, Hammond[s] testified that on the night of the murder, he saw Jones leave the apartment with a rifle in his hand. Hammond[s] then heard gunshots and shortly thereafter Jones returned to the apartment still carrying the rifle. This testimony was consistent with the State's theory that Jones had fired the shots from a downstairs apartment. However, Hammond[s] was impeached by an earlier sworn statement to the effect that he did not see Jones with a gun that night. The police found two rifles in the apartment, but the condition of the bullets in the officer's body prevented them from making a ballistics comparison. A hand-swab test was taken to determine whether Jones had recently fired a gun. However, the crime laboratory analyst testified that there was an insufficient amount of antimony present for him to reach any conclusion. He explained that he would have expected this result because of the four-hour delay in taking the test and the fact that a rifle rather than a pistol was involved.
Jones, 591 So.2d at 912-13.
The record also reflects that Jones maintained his innocence at trial and testified that the rifles discovered in his apartment belonged to Glen Schofield, a friend who stayed in his apartment on occasion. Further, Hammonds testified that Schofield was at Jones' apartment the night of the shooting and that Schofield left the apartment armed with a handgun at approximately 12:15 a.m. The defense, however, did not present any additional evidence that might have linked Schofield to the murder. Moreover, Jones' trial attorney did not argue to the jury that Schofield might have committed the murder.
In the postconviction motion at issue, Jones argues that he is entitled to a new trial because he has unearthed substantial evidence which demonstrates that Schofield murdered Officer Szafranski. Jones proffered several affidavits in support of his newly discovered evidence claim: (1) Daniel Cole and Sharon Denise Reed stated that shortly after hearing gunshots they observed Schofield running with a rifle in his hand near the murder scene; (2) Frank Pittro and Franklin Delano Prince, inmates, stated that Schofield told them that he murdered Officer Szafranski; (3) an investigator from the office of the Capital Collateral Representative ("CCR") stated that Paul Marr told the investigator that Schofield had confessed to the murder while they were incarcerated together; (4) a representative of the Duval County Sheriff's Department stated that Michael Richardson, an inmate, told him that he had heard Schofield confess to the murder; (5) Katherine Dixon stated that Schofield was supposed to *312 meet her and her boyfriend the night of the murder but that Schofield never showed up and that the following morning she observed a 30-30 rifle in the closet of her apartment which her boyfriend discarded that morning without comment; (6) Linda Atwater, Jones' girlfriend at the time of the murder, stated that she saw Schofield running upstairs with a rifle or shotgun in his hand the night of the murder and that he told her "Them crackers are after me;" and (7) Patricia Owens (then Ferrell), who lived with Schofield at the time of the murder, testified that Schofield made inculpatory statements to her the day after the murder and that years later he confessed to the murder.
Patricia Owens, Daniel Cole, Sharon Denise Reed, Frank Pittro, and Franklin Delano Prince testified at the evidentiary hearing on remand. All of these witnesses essentially repeated the statements contained in their respective affidavits. Jones presented a number of additional witnesses at the hearing: (1) a detective who was unable to authenticate a diagram of the neighborhood in which Officer Szafranski was murdered; (2) two representatives from CCR who described the investigations which they conducted on Jones' behalf; (3) Martha Bell, Reed's mother, testified that Reed telephoned her the morning after the murder and told her that she had seen Schofield running with a rifle in his hand near the murder scene; (4) two additional inmates, Andrea Hicks Jackson and Donald Perry, testified that Schofield confessed to the murder; and (5) Michael Richardson contradicted the affidavit relating to him by testifying that he never heard Schofield confess to the murder. Finally, at the hearing, Jones proffered an additional affidavit wherein Hammonds disavowed his trial testimony by stating that he did not observe Jones with a rifle the night of the shooting. Therein, Hammonds further stated that he told police that he had seen Jones with a rifle only after having been beaten by the police.
The trial court refused to admit Hammonds' affidavit into evidence. The trial court reasoned that Hammonds' testimony was not newly discovered evidence because Hammonds had been impeached at trial with a prior sworn statement that he did not see Jones with a rifle the night of the shooting. The trial court also concluded that the testimony of Katherine Dixon and Linda Atwater, and the testimony of Patricia Owens relating to statements allegedly made by Schofield at the time of the murder, did not constitute newly discovered evidence because Jones could have discovered this evidence through the use of diligence at the time of trial. Further, the trial court concluded that the testimony relating to CCR's interview with Paul Marr did not qualify as newly discovered evidence because Jones sought to introduce Marr's statements at the hearing on Jones' first postconviction motion. However, the trial court concluded that the testimony of Daniel Cole, Sharon Denise Reed, and Martha Bell tenuously qualified as newly discovered evidence. The trial court also concluded that the testimony of Andrea Hicks Jackson, Frank Pittro, Michael Richardson, Franklin Delano Prince, and Donald Perry qualified as newly discovered evidence. And the trial court concluded that the testimony of Patricia Owens concerning statements Schofield allegedly made to her after he was released from prison qualified as newly discovered evidence. The trial court concluded, however, that only a scant portion of this newly discovered evidence was admissible.
The trial court found that the testimony of Daniel Cole and Sharon Denise Reed was marginally admissible and that Martha Bell's testimony would have been admissible if the State challenged Reed's testimony. The trial court disposed of all the other newly discovered evidence together because it involved statements Schofield allegedly made inculpating himself in the murder of Officer Szafranski. The trial court concluded that Schofield's alleged confessions constituted inadmissible hearsay and that they did not fall within the declaration against penal interest exception to the rule against hearsay because Schofield was available to testify. Finally, the trial court distinguished Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), but concluded that, even assuming Chambers was applicable, Schofield's alleged confessions were still inadmissible because, on balance, the State's *313 interest in preserving the established rules of evidence was paramount.
The trial court considered the evidence presented at trial along with the testimony of Daniel Cole, Sharon Denise Reed, and Martha Bellthe only newly discovered evidence the trial court deemed admissibleand determined that Jones probably would not have been acquitted if this newly discovered evidence had been introduced at trial. Accordingly, the trial court again denied Jones' second postconviction motion.
Before this Court, Jones contends that the trial court erred in excluding Schofield's alleged confessions and Hammonds' recantation of his trial testimony. Jones posits that if the jury had heard Hammonds' recantation and Schofield's alleged confessions, along with the other admissible newly discovered evidence he now proffers, then it would probably have acquitted him and he is therefore entitled to a new trial.[1]
As to Hammonds' affidavit, Jones argues that this Court has traditionally treated recantations as newly discovered evidence. Jones fails to recognize, however, that this is not a case in which a witness suddenly recants his or her trial testimony years after the fact. Hammonds' statements in his affidavit mirror the testimony he gave at a hearing on a motion to suppress Jones' confession. His testimony at the suppression hearing was used to impeach him at trial and the jury was therefore well aware that Hammonds had changed his story several times. Hammonds' affidavit simply offers nothing new. Consequently, we find that Hammonds' affidavit does not constitute newly discovered evidence.
Jones proposes two theories as to why Schofield's alleged confessions were admissible. First, Jones argues that Schofield's alleged confessions were admissible as declarations against penal interest. Second, Jones contends that even if Schofield's alleged confessions did not fall within an exception to the hearsay rule they were admissible under due process principles as set forth in Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).
Section 90.804(2), Florida Statutes (1995), provides in pertinent part:
(2) HEARSAY EXCEPTIONS.The following are not excluded under s. 90.802 [which states that "[e]xcept as provided by statute, hearsay evidence is inadmissible], provided that the declarant is unavailable as a witness:"
....
(c) Statement against interest.A statement which, at the time of its making, was so far contrary to the declarant's pecuniary or proprietary interest or tended to subject the declarant to liability or to render invalid a claim by the declarant against another, so that a person in the declarant's position would not have made the statement unless he or she believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is inadmissible, unless corroborating circumstances show the trustworthiness of the statement.
(Emphasis added.) By its plain language, in order for a statement against penal interest to be admissible, section 90.804(2) requires a showing that the declarant is unavailable as a witness. The party seeking to introduce a statement against penal interest bears the burden of establishing the unavailability of the declarant. Magna v. State, 350 So.2d 1088, 1089 (Fla. 4th DCA 1977).
At the hearing on remand, the State repeatedly stated that Schofield was ready, willing, and able to testify.[2] When the trial court questioned Jones' lawyer as to why *314 Schofield was not being called, counsel for the defense stated:
There isn't a person in the courtroom here, Your Honor, that doubts what Mr. Schofield would say if he did take the stand. That's not a mystery. I mean we all know what Mr. Schofield will say if he takes the stand. He's going to say, it's a lie, I never said it, I never did it. We all know that. That's a given. You know, he's been working with Detective Housend for the past five days that I've been here. He has no fear of the State of Florida right now. He's working with them. I mean I have no doubt what Mr. Schofield will say on the stand, so I'm not going to call him and I don't think I need to call him.
Contrary to Jones' attorney's position, we do not know what Schofield would have said had he been called as a witness. The burden was on Jones to establish that Schofield was unavailable and Jones failed to meet that burden. Consequently, we find that Schofield's alleged confessions are not admissible under the declaration against penal interest exception to the hearsay rule.[3]
Even if Jones had established that Schofield was unavailable for purposes of section 90.804(2)(c), Jones also had the burden of establishing that Schofield's alleged confessions were statements against penal interest within the meaning of section 90.804(2). Rivera v. State, 510 So.2d 340, 341 (Fla. 3d DCA 1987); see also United States v. Seabolt, 958 F.2d 231, 233 (8th Cir.1992), cert. denied, 507 U.S. 971, 113 S.Ct. 1411, 122 L.Ed.2d 782 (1993) (concluding that "a statement by one criminal to another criminal ... is more apt to be jailhouse braggadocio than a statement against his criminal interest"). Moreover, Jones had the burden of presenting corroborating circumstances demonstrating the trustworthiness of Schofield's alleged confessions. Rivera, 510 So.2d at 341. Having determined that Jones failed to demonstrate that Schofield was unavailable, we need not consider whether Schofield met these additional burdens.
Lastly, Jones contends that Schofield's statements must be admitted under Chambers irrespective of the unavailability requirement of section 90.804. We have previously recognized that
[i]n Chambers, the Court held that "[U]nder the facts and circumstances of this case the rulings of the trial court deprived Chambers of a fair trial." 410 U.S. at 303, 93 S.Ct. at 1050. In that case, the defendant was tried in Mississippi for the murder of a police officer. Another individual made three verbal confessions to this crime and one written confession which he later repudiated. The prosecution did not call this declarant as a witness so the defense did. At that time, under the "voucher" rule in Mississippi, one could not impeach one's own witness. Therefore, the defense was not allowed to have the verbal confessions admitted into evidence for that purpose. In addition, the hearsay rule prevented the testimony from being heard and Mississippi had no exception to the rule based on declarations against penal interest. The Court said in that case:
The hearsay statements involved in this case were originally made and subsequently offered at trial under circumstances that provided considerable assurance of their reliability. First, each of [declarant's] confessions was made spontaneously to a close acquaintance shortly after the murder had occurred. Second, each one was corroborated by some other evidence in the case....
Id. at 300, 93 S.Ct. at 1047. The Court further stated that it was establishing no new standards of constitutional law, nor was it diminishing the authority of the states over their own trial rules. Rather, *315 under the specific facts of this case, where the rejected evidence bore persuasive assurances of trustworthiness, its rejection denied the defendant a trial in accordance with due process standards. Id. at 302, 93 S.Ct. at 1049.
Card v. State, 453 So.2d 17, 21 (Fla.), cert. denied, 469 U.S. 989, 105 S.Ct. 396, 83 L.Ed.2d 330 (1984). Of course, unlike Mississippi at the time Chambers was decided, Florida recognizes a declaration against penal interest exception to the hearsay rule. Baker; § 90.804(2)(c), Fla.Stat. (1995). Moreover, unlike the statements made in Chambers, we find that Schofield's alleged confessions do not bear "persuasive assurances of trustworthiness." Hence, Chambers is distinguishable.
Having determined that neither Hammonds' affidavit nor Schofield's alleged confessions constitute admissible newly discovered evidence, we must next determine whether Jones is entitled to a new trial based on the admissible newly discovered evidence which he did presentthe testimony of Daniel Cole, Sharon Denise Reed, and Martha Bell. Cole and Reed testified that shortly after hearing gunshots they observed Schofield running with a rifle in his hand near the murder scene. Bell testified that Reed telephoned her the morning after the murder and told her that she had seen Schofield running with a rifle in his hand near the murder scene.
As the trial court noted, these three witnesses are something less than credible, to wit: (1) Cole testified that he had been convicted of five felonies; (2) Reed testified that Jones was her friend and that he grew up in her grandmother's neighborhood; and (3) Bell testified that she knew Jones and that "we all lived in the same neighborhood." Moreover, we have reviewed the transcript from the hearing and we find that the testimony of Cole and Reed was rife with inconsistencies.
Assuming arguendo that the jury would have believed these witnesses had they testified at trial, their testimony merely buttresses evidence presented at trial linking Schofield to the murder. At trial, the jury heard testimony (1) that the rifles discovered in Jones' apartment allegedly belonged to Schofield; (2) that Schofield allegedly was at Jones' apartment the night of the murder; and (3) that Schofield allegedly left Jones' apartment armed with a handgun an hour before the murder. In spite of this evidence, the jury found, beyond a reasonable doubt, that Jones murdered Officer Szafranski. We concur that it is not probable that the testimony of Cole, Reed, and Bell, without more, would have created a reasonable doubt in the minds of the jurors. At most, the evidence linking Schofield to the murder suggests that Schofield might have participated in the shooting along with Jones. None of this evidence weakens the case against Jones so as to give rise to a reasonable doubt as to his culpability. Accordingly, we agree with the trial court that even if the testimony of Cole, Reed, and Bell had been presented to the jury Jones probably would not have been acquitted.
For the foregoing reasons, we affirm the second denial of Jones' second postconviction motion.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, HARDING, WELLS and ANSTEAD, JJ., concur.
KOGAN, J., concurs in result only.
NOTES
[1] Jones raises five additional claims: (1) the trial court erred in refusing to admit various exhibits and affidavits into evidence; (2) the trial court erred in refusing to consider evidence which was not newly discovered, but which corroborated his theory that Schofield murdered Officer Szafranski; (3) the trial court failed to consider the cumulative effect of the newly discovered evidence; (4) the trial court erroneously applied the "conclusiveness test" which this Court specifically rejected in its opinion remanding this case; and (5) the trial court failed to conduct a penalty phase analysis of the newly discovered evidence. We find these claims to be without merit.
[2] In fact, the State transported Schofield to the courthouse for Jones' hearing and held him in a jail chute at the courthouse throughout the proceedings.
[3] Jones also opines that, broadly construed, Baker v. State, 336 So.2d 364 (Fla.1976), stands for the proposition that if the State can use a statement against its declarant as a sword then a third party is necessarily entitled to use the statement as a shield. We do not read Baker as enunciating such a sweeping rule. In Baker, this Court simply extended the common law declaration against interest hearsay exception to cover declarations against penal interest. 336 So.2d at 369. Our decision in Baker was subsequently codified by the legislature in the Florida Evidence Code as section 90.804(2)(c) which includes the unavailability requirement. Ch. 76-237, § 1, at 575, Laws of Fla.